E.A. STROUT WESTERN REALTY
AGENCY, INC., Roosevelt Agency,
Plaintiff and Appellant,

v.

W.C. FOY & SONS, INC., a Utah corpora-
tion; W.C. Foy & Sons, a partnership;
William W. Foy, Leo B. Foy and John H.
Foy, partners, dba W.C. Foy & Sons,
Inc., Defendants and Respondents.

No. 17784.

Supreme Court of Utah.

June 16, 1983.

George E. Mangan, Roosevelt, for plaintiff and appellant.

Anthony B. Quinn, Merlin O. Baker, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiff brought this action to recover a real estate commission alleged due by reason of the sale of certain ranch property under a listing agreement. The jury returned a special verdict, finding that plaintiff was not entitled to a commission, not having procured the purchaser under the terms of the agreement. Judgment was entered accordingly and plaintiff appeals, seeking reversal and entry of judgment in its favor as a matter of law, or in the alternative, a new trial.

In May, 1974, defendants offered to sell their 8,200-acre ranch in Duchesne County, Utah, to the Ute Indian Tribe, a contiguous landowner. Various representatives and advisors of the Tribe and of the Bureau of Indian Affairs met with the defendants, visited the ranch and indicated an interest in acquiring the property. However, no agreement of sale was reached.

In April, 1975, Dean Frandsen, an agent of plaintiff, contacted defendants seeking a listing of the ranch. Frandsen represented that he had a California buyer interested in the property. Subsequently, on April 7, 1975, defendants entered into an open, non-exclusive listing agreement with plaintiff. The agreement provided that if plaintiff were "to procure a purchaser" at the listed price of $646,770, it would be entitled to a selling commission of ten percent of the purchase price. The agreement also reserved the right to defendants to "sell the property to a buyer procured by [themselves] or through another agent and in such case no commission or other charge shall be due" plaintiff. Three days after the agreement was entered into, Frandsen made a sales presentation to the Tribe in the form of a letter.

There was a sharp conflict in the evidence presented at trial as to how and why plaintiff became involved in negotiations with the Tribe. Defendant Wendell Foy testified that at the time the listing agreement was entered into, he told Frandsen that the defendants had been negotiating with the Tribe and that they were interested in acquiring the ranch. In his testimony, Frandsen denied that he had been so advised or that he was otherwise aware of the Tribe's interest.

Defendant Wendell Foy further testified that the defendants sanctioned Frandsen's involvement in the negotiations with the Tribe only after he represented to them that one Dennis Mower, the Director of Resources of the Tribe, had told him that defendants' negotiations with the Tribe were "dead," but that with his "connections through Mower" he could convince the Tribe to buy the ranch. Subsequently, defendants learned that their negotiations with the Tribe had never been "dead," but in fact had been ongoing since 1974. This was confirmed by the undisputed trial testimony of Dennis Mower, Director of Resources of the Tribe; Adelyn Logan, Realty Officer, Bureau of Indian Affairs; and Ray Smith, Land Operations Officer, Bureau of Indian Affairs. Thereupon, Frandsen was confronted with his alleged misrepresentation, and was thereafter deprived of further

involvement in the ensuing negotiations with the Tribe. Ultimately, the defendants sold the ranch to the Tribe.

At the close of all of the evidence, both sides moved for a directed verdict. The motions were denied, and following the jury verdict plaintiff moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motions were denied and this appeal followed.

Plaintiff designated five points of error on appeal. However, each point bears upon one or the other of two basic contentions that 1) plaintiff was entitled to judgment as a matter of law, and 2) the court's instructions and special verdict failed to adequately present plaintiff's theory of the case to the jury.

██ Plaintiff's contention that the trial court erred in refusing to direct a verdict necessarily fails in light of the sharp conflicts in the evidence. The issue of whether plaintiff was entitled to a sales commission clearly emerged as one of fact, rather than one of law.[1]

██ It is the prerogative of the jury to resolve issues of fact, and the accepted rules of appellate review preclude this Court from substituting its judgment for that of the jury on issues of fact.[2] On appeal, we view the evidence in the light most supportive of the verdict,[3] and assume that the jury believed those aspects of the evidence which sustain its findings and judgment.[4] We will upset a jury verdict only upon a showing that the evidence so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case.[5]

██ Although in conflict, there is substantial, credible evidence in the record which supports the jury's determination that plaintiff did not procure the Tribe as a purchaser, and thus did not earn a sales commission. As was its prerogative to do, the jury chose to believe the testimony of defendant Wendell Foy and discredit that of Frandsen on the crucial issues as to whether Frandsen was aware of defendants' prior negotiations with the Tribe; whether the Tribe had an ongoing interest in acquiring the ranch; and whether Frandsen represented to defendants that the deal with the Tribe was "dead" and could only be resurrected through his influence with Mower. However, in so doing, as was also its prerogative, the jury saw fit to absolve Frandsen of any false representation.

Turning now to plaintiff's remaining contention that the jury was not properly instructed on its theory of the case, defendants' rejoinder is that plaintiff failed to preserve any exceptions to the court's instructions submitted to the jury and, in any event, the instructions were proper and not prejudicial.

██ A party may not assign as error the giving or the failure to give an instruction unless he objects thereto,[6] and the objection must be sufficiently specific to give the trial court notice of the claimed error.[7] While this Court may in its discretion and in the interests of justice review the giving or failure to give an instruction,[8] it is incumbent upon the aggrieved party to present a persuasive reason to invoke the discretion of this Court.[9]

██ In the instant case, plaintiff contends that it was justified in not lodging proper exceptions to the court's instructions to the jury because it was led to believe

1. *Mel Trimble Real Estate v. Fitzgerald*, Utah, 626 P.2d 453 (1981).

2. *Watters v. Querry*, Utah, 626 P.2d 455 (1981).

3. *Cintron v. Milkovich*, Utah, 611 P.2d 730 (1980).

4. *Gossner v. Dairymen Associates, Inc.*, Utah, 611 P.2d 713 (1980).

5. *Ute-Cal Land Development Corp. v. Sather*, Utah, 605 P.2d 1240 (1980).

6. Rule 51, Utah R.Civ.P.

7. *Redevelopment Agency of Salt Lake City v. Barrutia*, Utah, 526 P.2d 47 (1974).

8. Rule 51, Utah R.Civ.P.

9. *Wagner v. Olsen*, 25 Utah 2d 366, 482 P.2d 702 (1971).

that should the jury resolve the issue of "bad faith and conduct" in its favor, the court would then direct a verdict. However, the following portion of the record cited by plaintiff does not bear out its contention.

At the time the court was formulating its instructions, plaintiff requested permission to submit a proposed instruction bearing upon the fiduciary duty of a seller to a listing agent, and in granting permission to do so, the following colloquy ensued between the court and counsel:

THE COURT: I think those concepts are within the facts and within the disposition of the case based on the answers to the questions that were put. *The extent to which that law would have any reflection upon the fact findings that are made by the jury, the Court can apply to the law that is applicable.* [Emphasis added.]

I think we can get the phrased questions to resolve the conduct whether or not there has been any bad faith conduct, and that's all I am concerned about.

MR. MANGAN: Will the Court be instructing the jury, though, on the duty of Mr. Frandsen as the realtor to Mr. Foy?

THE COURT: *I'm not sure whether I will. I think the instructions that counsel has prepared, as you have seen, there is a fair statement of the fiduciary duty.* [Emphasis added.]

MR. MANGAN: Is that the one that I submitted?

THE COURT: No, the one that Mr. Baker submitted. I'm not sure I remember yours. I guess I read Mr. Baker's last.

MR. BAKER: That was taken out of a specific Utah case, your Honor.

THE COURT: It appears to me that I had seen that kind of verbage [sic] before surrounding that concept.

MR. MANGAN: But it puts it strictly in the sense of a real estate agent. And I think the cases speak themselves to both. I have those cases here, and I'll show them to you.

THE COURT: *Well, you get what kind of instruction you want me to look at, Mr. Mangan, and then I'll make a decision.* Remember, this isn't going to the jury on a general verdict. It's going to be specific interrogatories.

MR. MANGAN: *I understand that, your Honor.* [Emphasis added.]

\* \* \* \* \* \*

■ All that is to be gained from the foregoing excerpts from the trial transcript is that the court intended to fulfill its obligation to apply the law to the findings of the jury as they might be expressed in their responses to the interrogatories contained in the special verdict, and to afford counsel for plaintiff the opportunity of submitting proposed jury instructions for approval. It would be wholly unreasonable and improper to interpret those comments so broadly as to relieve counsel of the obligation to take whatever exceptions he may have had to the court's instructions, or to impose an obligation on the court to rule in favor of plaintiff as a matter of law in the face of the jury verdict that plaintiff did not procure the sale. In any event, it appears that the court's instructions presented to the jury are legally sufficient and without prejudice to plaintiff.

In its instructions, the court advised the jury that plaintiff's entitlement to a commission hinged upon a showing that it had procured a purchaser.[10] The court then advised the jury of the means to be followed in determining whether plaintiff procured the Tribe as a buyer,[11] and also defined

---

**10.** The court's instruction No. 5 reads as follows:

Under the terms of the Listing Agreement, the plaintiff to be entitled to a commission had the responsibility to procure a purchaser ready, willing and able to buy the property at the listed price and terms or a price and terms acceptable to the defendants, or that

plaintiff was the procuring cause of the sale that was ultimately concluded to the Tribe.

The plaintiff has the "Burden of Proof" as in these instructions defined, on the issue of procuring a buyer or the sale as above-set [sic] forth.

**11.** The court's instruction No. 6 reads as follows:

what is meant by the term "procure."[12] Said instructions comport with the prior pronouncements of this Court as to when a sales commission is due.[13]

Plaintiff's theory of the case was of course that it was entitled to recover a sales commission because it had procured the Tribe as a buyer. That theory was clearly and plainly presented to the jury in ordinary, concise and understandable language[14] as is evidenced by the court's instructions Nos. 5, 6 and 7.[15]

 In regard to the interrogatories submitted to the jury, plaintiff did take exception to Nos. 3 and 7 thereof, contending that since each addressed the issue of procurement, undue emphasis was placed on that issue, which tended to accentuate defendants' theory of the case, and would confuse the jury.

While it is true that both interrogatories complained of were directed toward the ultimate fact the jury was called upon to determine, i.e., whether plaintiff procured the sale to the Tribe, it is not to be said that they favored one side or the other. The jury was left free to resolve that issue in favor of either side as their deliberations should dictate. Nor does it appear that the interrogatories in any way tended to confuse.

 It lies within the broad discretion of the trial court to determine whether special interrogatories are to be used and, if so, the content thereof.[16] In the absence of a showing of an abuse of discretion, the court's actions will not be disturbed.[17] No such abuse of discretion is evident in this case.

The record before us reveals that the factual issues and contentions of the parties at trial, together with the applicable law, were set forth in a clear and understandable manner in the court's instructions and interrogatories that were presented to the jury, and that the parties were afforded a fair trial.[18]

The judgment is affirmed. Costs to defendants.

STEWART, OAKS and DURHAM, JJ., concur.

HOWE, J., concurs in the result.

---

In determining whether the plaintiff did "procure" the Ute Indian Tribe as a buyer of defendants' property, or a sale at a price and terms agreeable to the defendants, you may consider the source, the course of conduct between the plaintiff and the defendants and the Ute Indian Tribe, from and after the listing agreement was signed on April 7, 1975. Such conduct would include correspondence, meetings, and other actions or activities of the parties.

**12.** The court's instruction No. 7 reads as follows:

In this case, under the terms of the listing agreement and the law, the plaintiff, in order to recover any commission, must be the procuring cause of a buyer who was able and willing to buy the property in accordance with the price and terms of the listing agreement, or at a price and terms acceptable to defendants. The plaintiff has the burden to persuade you by the evidence that Dean Frandsen was the procuring cause of the sale

of the defendant's property to the Ute Tribe. *While it is not essential that the broker's efforts be the sole cause of the sale or transaction, it is essential that they be the predominant and effective cause and not merely an indirect, incidental or contributing cause in one of the links in the chain of causes.* [Emphasis added.]

**13.** *Frederick May & Company v. Dunn,* 13 Utah 2d 40, 368 P.2d 266 (1962).

**14.** *Gilhespie v. DeJong,* Utah, 520 P.2d 878 (1974).

**15.** *Supra* nn. 10, 11 & 12.

**16.** Rule 49, Utah R.Civ.P.; *Page v. Utah Home Fire Insurance Company,* 15 Utah 2d 257, 391 P.2d 290 (1964).

**17.** *Id.*

**18.** *Wagner v. Olsen, supra* n. 9.