**Glen A. BILLINGS, Guardian Ad Litem for and in Behalf of Stanley D. BILLINGS, a protected person, Plaintiff and Appellant,**

v.

**UNION BANKERS INSURANCE CO., a Texas Corporation, Defendant and Appellee.**

**No. 900440.**

Supreme Court of Utah.

Oct. 24, 1991.

L. Rich Humpherys, Mark L. Anderson, and Karra J. Porter, Salt Lake City, for plaintiff and appellant.

David W. Slagle, Larry R. Laycock, and Daniel D. Hill, Salt Lake City, for defendant and appellee.

HALL, Chief Justice:

We granted plaintiff Glen A. Billings an interlocutory appeal from the denial of his motion for partial summary judgment. At stake is whether defendant Union Bankers Insurance Company ("Union Bankers") is obligated to pay for Stanley D. Billings' treatment at Tangram Rehabilitation Network. In an interlocutory appeal from the denial of a motion for summary judgment, we review the facts in a light most favorable to the party opposing the motion.[1]

In June 1984, Stanley Billings entered into a catastrophic health insurance con-

---

1. *Culp Constr. Co. v. Buildmart Mall,* 795 P.2d   650, 651 (Utah 1990).

tract with Union Bankers. The policy contained the following language:

## BENEFIT PROVISIONS

If a family member incurs Covered Expenses because of injury or sickness, we will pay the Benefit Percentage shown in the Schedule of the Covered Expenses incurred by a family member in excess of the Deductible. We will pay this Benefit Percentage until the Coinsurance Limit, if any, is reached. After the Coinsurance Limit is reached we will pay 100% of the Covered Expenses incurred by a Family member during a Benefit Period....

....

## COVERED EXPENSES

Covered Expenses are the expenses incurred by a family member, because of injury or sickness. They include the usual and customary charges for the following services, supplies and treatment when ordered by a doctor.

A. IN HOSPITAL....

....

B. SKILLED NURSING....

....

C. HOME HEALTH CARE....

In addition, the policy contained a rider which provides:

## BENEFITS

....

Part II. After the first $100 of covered expense incurred in a calendar year, we'll pay the Rider Benefit Percentage of the usual and customary expense incurred for the following. The expense must be due to injury or sickness....

....

5. Doctor calls....

6. Miscellaneous emergency room, outpatient and out of hospital medical charges.

Throughout the period of the policy, Billings paid the premiums and performed each act required to keep the policy in full force and effect.

On September 22, 1985, Billings was involved in a motorcycle accident which resulted in serious injuries, including traumatic brain injury. Billings was hospitalized at Holy Cross Hospital from the time of the accident until May 1986. Pursuant to the insurance policy, Union Bankers paid expenses Billings incurred at Holy Cross Hospital. Due to the incapacitating nature of his injuries, Billings' father, Glen Billings, was appointed his conservator and later guardian ad litem.

During May 1986, Dr. Richard S. Goka determined that Billings' treatment could be improved if he was transferred to Tangram Rehabilitation Network in San Marcos, Texas (Tangram). Tangram is not a rehabilitation hospital; rather, it is a transitional treatment center for individuals who are medically stable but have suffered loss of memory and basic functional skills due to traumatic brain injury. As patients with brain injuries are at greater risk for developing certain life-threatening medical conditions, Tangram also monitors its patients for the onset of such conditions as seizures, intercranial pressure, overgrowth of bone tissue, and hormonal imbalances. Tangram also provides for the personal needs of its patients when necessary.

When Union Bankers learned that Billings was to be transferred to Tangram, it informed Glen Billings that it did not consider treatment at Tangram to be a covered expense. On May 9, 1986, Billings transferred to Tangram. At the time of his admission, he could not walk or talk normally, suffered from extreme memory loss and vision problems, and had experienced a seizure. The treatment program at Tangram was designed to enable Billings to recover from these conditions to the extent possible. Because he was taking anti-convulsant medication, Billings was also monitored for the possible side effects of the prescription drug. His progress was reviewed daily by Dr. Seaton, the medical director at Tangram. Dr. Seaton met with Billings every two weeks to reevaluate and, if appropriate, modify his treatment.

Billings' condition improved during his stay at Tangram. However, on November

25, 1986, before he was able to regain the maximum degree of function possible, he was forced to discontinue treatment due to a lack of funds. During his stay at Tangram, Billings incurred expenses of $46,-133.26 for confinement at Tangram, $3,800 for Dr. Seaton's treatment, and $379.61 for prescription drugs, lab costs, and other miscellaneous expenses. The total expense incurred was $50,312.87. Union Bankers paid only $303.70 of these expenses for certain prescription drugs.

On May 4, 1988, Billings initiated this suit, alleging that by refusing to pay the expenses incurred at Tangram, Union Bankers breached the coverage provision of the insurance policy and the implied covenant of good faith and fair dealing. Billings asserts that he is entitled to be reimbursed for the expenses incurred at Tangram and consequential damages resulting from the premature termination of treatment.

On April 10, 1990, Billings filed a motion for partial summary judgment, seeking a ruling that Union Bankers had breached the insurance contract by denying coverage for Billings' treatment at Tangram. In support of his motion, Billings provided the affidavit of Dr. Seaton describing Tangram and the treatment which Billings received there. The information contained in the affidavit is uncontradicted. However, Union Bankers offered a deposition of one of its employees which contained hearsay testimony claiming that Tangram was not a hospital and that the patients at Tangram were medically stable. On August 31, 1990, the trial judge denied the motion "for the reason that differing interpretations of the insurance policy create genuine issues of material fact to be tried." Billings petitioned this court for interlocutory review.

The general issue on appeal is whether the trial judge erred in ruling that because the policy is ambiguous, there are genuine issues of material fact as to whether the treatment at Tangram is a covered expense. Billings contends that the insurance policy covers the treatment at Tangram or, in the alternative, that the policy is ambiguous and therefore, as a matter of law, should be construed in favor of the insured. Union Bankers contends that the trial court was correct in not granting summary judgment because there are genuine issues of material fact left to be tried, namely, "(1) whether medical treatment at a medical facility is all that is covered; and (2) whether Tangram is a medical treatment facility." In the alternative, Union Bankers maintains that even if the trial court stated an improper reason for its denial of summary judgment, this court should not interpret the policy but remand the case for trial.

Notwithstanding the conclusion reached by the trial court that the contract contained ambiguities giving rise to issues of fact, the case is not ripe for summary judgment for other reasons.

The over riding factual issue remaining that precludes disposition by way of summary judgment is whether Tangram furnished medical treatment at a facility covered by the terms of the insurance contract.[2] The record before us, including the affidavit of Dr. Seaton, fails to adequately demonstrate the nature of the treatment received at Tangram.

Affirmed and remanded for further proceedings.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

**2.** Summary judgment is only appropriate when there are no issues of genuine fact and the moving party is entitled to a judgment as a matter of law. Utah R.Civ.P. 56(c); *Utah State Coalition of Senior Citizens v. Utah Power & Light,* 776 P.2d 632, 634 (Utah 1989).