Glen A. BILLINGS, as guardian ad litem for Stanley D. Billings, a protected person, Plaintiff, Appellee, and Cross–Appellant,

v.

UNION BANKERS INSURANCE COMPANY, a Texas corporation, Defendant, Appellant, and Cross–Appellee.

No. 940098.

Supreme Court of Utah.

March 19, 1996.

Rehearing Denied July 1, 1996.

L. Rich Humpherys, Mark L. Anderson, Stacy L. Hayden, Salt Lake City, for plaintiff.

Robert S. Campbell, Kevin Egan Anderson, Joann Shields, David W. Slagle, Salt Lake City, for defendant.

ZIMMERMAN, Chief Justice:

Glen A. Billings brought this action on behalf of his son Stanley D. Billings ("Billings") against Union Bankers Insurance Company ("Union Bankers"), alleging that Union Bankers breached both the express terms and the implied covenant of good faith and fair dealing contained in a catastrophic

health insurance contract. The case was tried to a jury, which found a breach of both the express and the implied terms of the contract and returned a $1,800,000 verdict in Billings' favor. The district court also awarded Billings "reasonable" attorney fees of $110,651 but refused to hold Union Bankers liable for the substantially higher contingency fee which Billings actually incurred. Union Bankers appeals the jury verdict, and Billings cross-appeals the award of attorney fees. We affirm the verdict but vacate the award of attorney fees and remand for recalculation of Billings' recoverable fees in accordance with his fee agreement.

In June of 1984, Billings entered into a catastrophic health insurance contract with Union Bankers in which Union Bankers agreed to pay certain medical expenses incurred by Billings as a result of injury or sickness. Covered expenses included hospital inpatient services, room, and board; skilled nursing facility services, room, and board; and home health care services. In addition, the policy contained a miscellaneous benefits rider in which Union Bankers agreed to pay, among other things, certain out-of-hospital medical expenses. Throughout the period of the policy, Billings paid the premiums and performed each act required to keep the policy in full force and effect.

On September 22, 1985, Billings was involved in a motorcycle accident in which he sustained serious injuries, including traumatic brain injury. He was hospitalized for several months following the accident, and pursuant to the insurance policy, Union Bankers paid Billings' hospitalization expenses.

In May of 1986, Dr. Goka, Billings' treating physician at Holy Cross Hospital, determined that Billings' recovery would be improved if he were transferred to Tangram Rehabilitation Network in San Marcos, Texas ("Tangram"). Tangram is a transitional treatment center for individuals who are medically stable but who have suffered loss of memory or basic functional skills due to traumatic brain injury. Billings was admitted to Tangram on May 9, 1986. However, Union Bankers denied coverage for Billings' treatment at Tangram, stating that the insurance policy did not cover such treatment.

Although his condition was improving, Billings discontinued his treatment at Tangram on November 25, 1986, due to a lack of funds.

Billings commenced this action on May 4, 1988, alleging that Union Bankers breached both the express coverage provision and the implied covenant of good faith and fair dealing contained in the insurance contract. Billings sought reimbursement of the expenses he incurred at Tangram and consequential damages resulting from the premature termination of treatment, which allegedly prevented Billings from ever achieving his full potential for recovery.

On April 10, 1990, Billings moved for partial summary judgment, seeking a ruling that Union Bankers had breached the express coverage provision by refusing to pay for Billings' treatment at Tangram. The trial judge denied Billings' motion "for the reason that differing interpretations of the insurance policy create genuine issues of material fact to be tried." Billings then petitioned this court for interlocutory review. We granted Billings' petition and affirmed the denial of Billings' motion because the "record before us ... fail[ed] to adequately demonstrate the nature of the treatment received at Tangram." *Billings v. Union Bankers Ins. Co.,* 819 P.2d 803, 805 (Utah 1991) (*"Billings I "*). We remanded, and the case proceeded to trial.

Following closing arguments, Union Bankers moved for a directed verdict on Billings' claim for breach of the implied covenant of good faith and fair dealing. Union Bankers argued that it could not have breached the implied covenant as a matter of law because its liability under the insurance policy was fairly debatable. The district court denied Union Bankers' motion but instructed the jury that Union Bankers would not be liable for breaching the implied covenant if its liability under the insurance policy was "fairly debatable [and] a reasonable insurance company in similar circumstances [would have] den[ied] the claim." The district court also instructed the jury that if it found Union Bankers to have breached the express coverage provision of the insurance contract, it could award Billings the value of the insurance policy benefits to which he was entitled

and if it found Union Bankers to have breached *either* the express coverage provision *or* the implied covenant of good faith and fair dealing, it could award Billings consequential damages for emotional suffering and mental anguish, medical expenses, lost income and earning capacity, and the extent to which Billings had been limited in pursuing and enjoying the ordinary affairs of life. Although Billings also sought to recover his attorney's contingency fee as consequential damages, the parties agreed to reserve this issue until after the trial.

Following the trial, the jury returned a special verdict finding that Union Bankers had breached both the implied covenant of good faith and fair dealing and the express coverage provision of the insurance contract. It awarded Billings $1,800,000. The district court subsequently addressed the attorney fee issue and awarded Billings what it determined to be a reasonable attorney fee of $110,651.

■ On appeal, Union Bankers argues that the district court erred in (i) denying Union Bankers' motion for a directed verdict on Billings' claim for breach of the implied covenant of good faith and fair dealing, and (ii) instructing the jury that it could award damages for mental anguish caused by Union Bankers' breach of the insurance contract's express coverage provision.[1] Billings cross-appeals the award of attorney fees. We address Union Bankers' arguments first and then consider Billings' cross-appeal.

Union Bankers first argues that the district court should have granted its motion for a directed verdict on Billings' claim for breach of the implied covenant of good faith and fair dealing. Union Bankers contends that under our decision in *Beck v. Farmers Insurance Exchange*, 701 P.2d 795 (Utah 1985), a first-party insurer may not be held liable for breaching the implied covenant where the basis for the alleged breach is that it wrongfully denied coverage and where the insured's claim was fairly debatable. Union Bankers argues that Billings' claim was fairly debatable as a matter of law and therefore that it could not have breached the implied covenant of good faith and fair dealing. Although we agree that *Beck* established a "fairly debatable" defense to a claim for breach of the implied covenant of good faith and fair dealing, we do not think that Billings' claim was fairly debatable as a matter of law.

■ We first state the applicable standard of review. Whether *Beck* established a fairly debatable defense to a claim for breach of the implied covenant based on an insurer's wrongful denial of coverage is a question of law which we review for correctness. *See State v. Montoya*, 887 P.2d 857, 858 (Utah 1994) ("[T]he interpretation of the effect of a prior judicial decision . . . constitutes a conclusion of law to which we accord no particular deference. Review is for correctness."); *see also State v. Pena*, 869 P.2d 932, 936 (Utah 1994). Whether an insured's claim is fairly debatable under a given set of facts is also a question of law. *See Pena*, 869 P.2d at 936 ("[T]he effect of a given set of facts is a question of law."). However, because of the complexity and variety of the facts upon which the fairly debatable determination depends, the legal standard under which this determination is made conveys some discretion to trial judges. *See id.* at 938–39. Therefore, although we will carefully review a trial court's conclusion that an insured's claim is or is not fairly debatable, we will grant the trial court's conclusion some deference. *See id.*

■ Because our decision today turns heavily on our holding in *Beck*, we examine

---

**1.** Union Bankers also raises various other challenges to the jury instructions and to the special verdict form, none of which were raised below. Union Bankers' failure to object at trial precludes our consideration of these issues on appeal unless, in our discretion, we conclude that the "interests of justice" would be served by addressing the issues. Utah R.Civ.P. 51. We have held that before this exception to the waiver principle is available to a party, that party must make a showing of " 'special circumstances warranting such a review.' " *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991) (quoting *Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988)). Like the appealing party in *Crookston*, Union Bankers has not begun to make this required showing. We therefore decline to consider its additional challenges to the jury instructions and special verdict form.

that case in detail here. Like the instant case, *Beck* involved an alleged breach of a first-party insurance contract, i.e., "an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured." *Beck,* 701 P.2d at 798 n. 2. In *Beck,* we held that the relationship between an insurer and its insured in the first-party context is contractual rather than fiduciary and that "as parties to a contract, the insured and the insurer have parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship." *Id.* at 800–01. We then explained:

> [T]he implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim.

*Id.* at 801.

■ The first question presented is whether, under *Beck,* a first-party insurer may be held liable for breaching the implied covenant on the ground that it wrongfully denied coverage if the insured's claim, although later found to be proper, was fairly debatable at the time it was denied. The answer lies in the nature of the duties imposed by the covenant on an insurer: when confronted with a claim for benefits by a first-party insured, the insurer must "*diligently* investigate the facts ..., *fairly* evaluate the claim, and ... act *promptly* and *reasonably* in rejecting or settling the claim." *Id.* (emphasis added). The terms used to characterize these duties plainly indicate that the overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with

their insureds.[2] It is entirely consistent with this overall approach to hold that when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so. *McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 437 So.2d 86, 90 (Ala.1983); *cf. Western Cas. & Sur. Co. v. Marchant,* 615 P.2d 423, 427 (Utah 1980) ("It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts."). Therefore, we conclude that *Beck* established a fairly debatable defense to a claim for breach of the implied covenant of good faith and fair dealing.

■ Having agreed with Union Bankers' construction of *Beck,* we next address its contention that the district court should have granted its motion for a directed verdict because Billings' claim was fairly debatable as a matter of law. Union Bankers argues that this court's conclusion in *Billings I* that a material issue of fact existed as to whether Union Bankers breached the express coverage provision was tantamount to a conclusion that Billings' claim for benefits was fairly debatable. We disagree.

In *Billings I,* Billings contended that the trial court erred in refusing to grant him partial summary judgment on the question of whether his treatment at Tangram was covered by the express terms of the insurance policy. We affirmed the trial court, reasoning that Billings had not adduced sufficient factual information regarding the nature of the treatment he received at Tangram to enable us to reach the legal question of whether that treatment was covered. *Billings I,* 819 P.2d at 805. In the present proceeding, Union Bankers assumes that it

---

2. We emphasize that whether an insurer has acted reasonably is an objective question to be determined without considering the insurer's subjective state of mind. As we said in *Beck v. Farmers Insurance Exchange,* 701 P.2d 795, 800 (Utah 1985), the "state of mind of the insurer is irrelevant; even an inadvertent breach of the covenant of good faith implied in an insurance contract can substantially harm the insured and warrants a remedy." This statement could be read as suggesting that the covenant of good faith and fair dealing imposes something akin to strict liability, i.e., if a claim is denied and a court later determines it should have been granted, the insurer is liable for breaching the implied covenant, regardless of how reasonable it was to deny coverage. On the contrary, this statement in *Beck* was intended only to disavow any implication that a "bad faith" state of mind is necessary to show a breach of the implied covenant, not to impose strict liability on insurers.

prevailed in *Billings I* because the contract provision in question was determined to be ambiguous, thus leaving the factual question of coverage for the jury to decide. However, this is a misreading of *Billings I*. We never reached the question of whether the insurance policy was sufficiently ambiguous to create a fact question. Had such a determination been made, there might well be merit to Union Bankers' assertion. However, because we made no such determination, we cannot conclude that Billings' claim was fairly debatable as a matter of law. Accordingly, we affirm the jury's finding that Union Bankers is liable for breaching the implied covenant of good faith and fair dealing.

■■■ Union Bankers next contends that the district court erred in instructing the jury that it could award Billings the same broad types of consequential damages for breach of the insurance contract's express coverage provision as it could award under *Beck* for breach of the implied covenant. We review Union Bankers' challenge to the jury instructions for correctness, granting the trial court no deference on its view of the law. *Steffensen v. Smith's Management Corp.*, 862 P.2d 1342, 1346 (Utah 1993).

Again, because our decision on this issue revolves around our holding in *Beck,* we refer to that case in some detail. *Beck* did not deal with a breach of the underlying insurance contract's express provisions, but only with a breach of the implied covenant of good faith and fair dealing. After settling on a contract, as opposed to a tort, theory upon which to base the plaintiff's claim, we discussed the types of damages recoverable for the breach. We began with the general rule that "[d]amages recoverable for breach of contract include both general damages, *i.e.,* those flowing naturally from the breach, and consequential damages, *i.e.,* those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Beck,* 701 P.2d at 801. We recognized that in appropriate circumstances, "consequential damages for breach of contract may reach beyond the bare contract terms," *id.* at 801–02 (citing *Bevan v. J.H. Constr. Co.,* 669 P.2d 442, 444 (Utah 1983); *Pacific Coast Title Ins. Co. v. Hart-*

*ford Accident & Indem. Co.,* 7 Utah 2d 377, 325 P.2d 906, 908 (1958)), and therefore, that the monetary limits of an insurance policy do not invariably define the amount for which the insurer may be liable upon a breach. *Id.* at 801. Under this framework, we proceeded to craft a damage measure for *Beck*'s rather unique contract approach to the implied covenant of good faith and fair dealing.

The *Beck* court observed that although it had rejected the tort approach, the measure of damages that the law made available for breach of the implied covenant should "not ignor[e] the principal reason for [other courts'] adoption of the [otherwise theoretically unsound] tort approach," i.e., to remove any incentive for insurers to breach the duty of good faith by expanding their exposure to damages caused by such a breach beyond the predictable fixed dollar amount of coverage provided by the policy. *Id.* In furtherance of this purpose, we departed from the restrictive traditional contract damages approach and followed a course more closely aligned with a tort damages approach. The *Beck* court concluded that a first-party insurer who breaches the implied covenant by unreasonably denying the insured the benefits bargained for may be held liable for broad consequential damages foreseeably caused by the breach, damages which might include those for mental anguish and which would be closely analogous to those available in states taking a tort approach. *Id.* at 802. Against this background, we consider Union Bankers' claim.

Union Bankers asserts that this expanded consequential damage measure should be available only for breach of the implied covenant, not, as the trial court instructed the jury, for breach of the express terms of the contract. We agree. As noted above, the implied covenant imposes a duty on first-party insurers to act in an objectively reasonable manner in handling an insured's claim. It would not further *Beck*'s purpose of encouraging insurers to act reasonably if we were to impose the broad consequential damages allowed in *Beck* on every insurer who is ultimately determined by a court to have incorrectly denied coverage, regardless of how reasonable the denial. Such an insurer

ought to incur no greater damage exposure than any other person breaching the express terms of a contract. Indeed, it would be unfair not to permit an insurer who has a legitimate dispute with an insured over a claim to have the dispute resolved before having to pay the claim. Exposure to the sweeping measure of damages available for breach of the implied covenant would effectively deny any careful insurer the option of declining to pay a contested claim and awaiting the outcome of the dispute. Therefore, we hold that the trial court erred in instructing the jury that it could award broad consequential damages for breach of either the implied covenant of good faith and fair dealing or the express terms of the insurance contract.

■ We must now determine the consequences of this instructional error. Union Bankers asserts that because the jury's special verdict did not identify what portion, if any, of Billings' damages were awarded pursuant to the erroneous instruction, we must vacate the entire damage award and remand for a redetermination of Billings' recoverable damages under proper instructions. We disagree.

■ When a civil case is submitted to a jury on several alternative theories and the jury does not identify which theory or theories it relied on in reaching its verdict, we may affirm the verdict if the jury could have properly found for the prevailing party on any one of the theories presented. *See Cambelt Int'l Corp. v. Dalton,* 745 P.2d 1239, 1241–42 (Utah 1987) (citing *Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d 832, 835 (Utah 1984)).[3] Because the jury in the instant case was properly instructed that it could award broad consequential damages for breach of the implied covenant, we may affirm the verdict if the evidence presented at trial is sufficient to sustain the verdict under that alternative theory of recovery. We conclude that the evidence is sufficient to sustain the verdict.

■ In reviewing a jury verdict, "we view the evidence in the light most supportive of the verdict, and assume that the jury believed those aspects of the evidence which sustain its findings and judgment." *E.A. Strout W. Realty Agency, Inc. v. W.C. Foy & Sons, Inc.,* 665 P.2d 1320, 1322 (Utah 1983) (citations omitted). Accordingly, we will "upset a jury verdict 'only upon a showing that the evidence so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case.'" *Pratt v. Prodata, Inc.,* 885 P.2d 786, 788 (Utah 1994) (quoting *E.A. Strout,* 665 P.2d at 1322); *see also Cambelt Int'l,* 745 P.2d at 1242. Having considered the evidence in accordance with this standard, we must let the verdict stand.

At trial, the following colloquy took place between Billings' counsel and Billings' father:

Q: Have you observed Mr. Billings, Stanley Billings, in a state of depression?

A: Most definitely.

Q: And can you describe how you were able to determine the depression, or how you reached this conclusion?

A: Well, he becomes very, or has been since his return, very discouraged as to the fact that he hasn't been able to do what he possibly could have done. . . .

. . . .

Q: . . . [D]o you have any understanding that the depressions that you have observed associated with Stan are related to the fact that he may have recovered more, or not?

A: Yes. . . . [H]e's constantly making the statement, quote, "Dad, I want to be a better man. I think I could have been a better man," words to that effect.

In addition, two doctors testified that Billings was capable of experiencing mental anguish and that Billings understood that his recovery from his brain injury was not as full and complete as it could have been. One of those doctors explained:

[E]very patient, including Mr. Billings, that has sustained an injury and has the

---

**3.** This rule is essentially a refined version of the harmless error rule, under which we will affirm a verdict unless we conclude that "the likelihood

of a different outcome [absent the error] is sufficiently high as to undermine our confidence in the verdict." *Crookston,* 817 P.2d at 796.

ability to look back and see what they were like prior to the injury, and compare what they are like now, experiences distress. And when they can perceive that they have not recovered because of a lack of treatment, or inappropriate treatment, it only accentuates that distress.

Although this evidence does not necessarily compel the conclusion that Billings suffered mental anguish as a result of Union Bankers' breach of the implied covenant, it is sufficient to sustain the verdict under that theory of recovery. Accordingly, we affirm the verdict.

 Finally, we address Billings' cross-appeal from the district court's award of attorney fees. Attorney fees may be recoverable as consequential damages flowing from an insurer's breach of either the express or the implied terms of an insurance contract. *See Canyon Country Store v. Bracey,* 781 P.2d 414, 420 (Utah 1989).[4] However, as consequential damages, attorney fees are recoverable only if they were "reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Beck,* 701 P.2d at 801. In the instant case, the district court found that although it was foreseeable at the time the parties entered into the insurance contract that Billings would incur attorney fees if Union Bankers breached, the amount of fees Billings incurred under his contingency fee arrangement was not foreseeable. Accordingly, the district court awarded Billings what it determined to be a reasonable attorney fee of $110,651 but refused to award the substantially higher contingency fee which Billings actually incurred.[5]

 Billings now argues that the district court's finding that Billings' contingency fee arrangement was not foreseeable was not supported by the evidence. We reverse a trial court's findings of fact only if they are

"'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)). In this case, Union Bankers presented no evidence that would support the district court's finding, while Billings presented substantial evidence to the contrary. For example, Billings established by uncontradicted testimony that in actions against insurance companies to recover the benefits of an insurance policy, the usual and customary attorney fee arrangement in Utah is a contingency fee of one-third of any recovery for claims pursued through trial and a higher percentage of any recovery if the case is appealed. In addition, Billings presented testimony that "all insurance carriers would reasonably anticipate and foresee that if their insured has to hire an attorney to pursue a claim, the insured may pay at least ⅓ or more of the recovery in attorneys fees and would also have to reimburse all advanced costs and expenses." Because there was no evidence to the contrary before the district court, we conclude that Billings' contingency fee arrangement was foreseeable and therefore that the district court's finding that the fee amount under Billings' contingency fee arrangement was not foreseeable was clearly erroneous. We therefore vacate the district court's award of attorney fees and remand for recalculation of the fees in accordance with Billings' contingency fee arrangement.

In sum, we conclude that *Beck* established a fairly debatable defense to a claim for breach of the implied covenant of good faith and fair dealing, but we reject Union Bankers' argument that Billings' claim was fairly debatable as a matter of law. Therefore, we affirm the jury's finding that Union Bankers is liable for breaching the implied covenant of good faith and fair dealing. We also conclude that the district court erred in instructing the jury that it could award broad conse-

---

4. We express no opinion as to whether attorney fees are recoverable as consequential damages in other contexts. However, we note that our prior cases have allowed such recovery for breach of an implied-in-fact employment contract. *Heslop v. Bank of Utah,* 839 P.2d 828, 840–41 (Utah 1992), and for breach of a construction contract where the plaintiff incurred attorney fees in defending against liens which arose out of the

contractor's failure to pay its subcontractors. *Pacific Coast Title Ins. Co. v. Hartford Accident & Indem. Co.,* 325 P.2d 906, 908 (Utah 1958).

5. Billings agreed to pay his attorney one-third of any recovery for claims pursued through trial and forty percent of any recovery if the case was appealed.

quential damages for breach of the express terms of the insurance contract. We nonetheless affirm the verdict because the jury was properly instructed that it could award such damages for breach of the implied covenant and the evidence is sufficient to sustain the verdict under that alternative theory of recovery. Finally, we vacate the district court's award of attorney fees and remand for recalculation of the fees in accordance with Billings' contingency fee arrangement.

STEWART, A.C.J., and DURHAM, J., concur in ZIMMERMAN, C.J., opinion.

HOWE, Justice, concurring and dissenting:

I concur except that I would allow the recovery of attorney fees by plaintiff as consequential damages only for defendant's breach of the implied covenant of good faith and fair dealing. I would not allow fees based on any breach of the express terms of the contract.

The general rule observed in this jurisdiction is that attorney fees can be awarded to the prevailing party in litigation only where the award is predicated upon a statute or the express terms of a written instrument such as a promissory note or a contract. However, we have departed from that general rule in a few cases and upheld the recovery of fees by a successful insured in a first-party suit against his or her insurer. The fees have been awarded as an element of consequential damages for breach of the implied covenant of good faith and fair dealing inherent in every insurance policy. *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 657 (Utah 1988); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801–02 (Utah 1985); *see also Moore v. Energy Mut. Ins. Co.*, 814 P.2d 1141, 1147 (Utah Ct.App. 1991). Attorney fees were also awarded to an insured suing his insurer in *Canyon Country Store v. Bracey*, 781 P.2d 414, 420 (Utah 1989), although it is not clear whether the fees in that case were awarded for breach of the implied covenant or for breach of the express terms of the insurance contract.

The majority in the instant case recognizes:

It would not further *Beck*'s purpose of encouraging insurers to act reasonably if we were to impose the broad consequential damages allowed in *Beck* on every insurer who is ultimately determined by a court to have incorrectly denied coverage, regardless of how reasonable the denial. Such an insurer ought to incur no greater damage exposure than any other person breaching the express terms of a contract.

Yet despite this statement, the majority sanctions the award of attorney fees as an element of consequential damages for *both* the breach of the implied covenant and the express provisions of the insurance contract. With that determination I cannot agree. It does violence to our general rule that in a breach of contract action, attorney fees cannot be awarded to the successful party unless the parties have so provided in their agreement. I would award fees only for breach of the implied covenant, consistent with the majority's holding that "the trial court erred in instructing the jury that it could award broad consequential damages for breach of either the implied covenant of good faith and fair dealing or the express terms of the insurance contract."

RUSSON, J., concurs in Justice HOWE's concurring and dissenting opinion.