F I L E D
United States Court of Appeals
Tenth Circuit

MAY 27 2004

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LAJUAN C. JOHNSON and STEVEN
JOHNSON,

      Plaintiffs-Appellees,

v.

LIFE INVESTORS' INSURANCE
COMPANY OF AMERICA,

      Defendant-Appellant.

No. 01-4254
D.C. No. 2:96 CV-0283-G
District of Utah

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Judge, and **HOLLOWA**Y and **EBEL**, Circuit Judges.

This is an appeal from a summary judgment for the plaintiffs in a diversity suit

arising from a dispute over the scope of an accidental death insurance policy. The

defendant insurance company denied the plaintiffs' claim under the policy on the ground

that the fall by the decedent Marvin Johnson and his resulting death were caused in whole

or in part by his illness, muscular dystrophy. Plaintiffs sued, claiming that the policy

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

covered Johnson's accidental death and did not exclude coverage. The district court agreed and granted the plaintiffs, the beneficiary under the policy and Johnson's personal representative, summary judgment.

The resulting judgment that was entered was for $305,291.33, costs of $3,041.91, and attorney's fees of $72,907.08, all awarded against Defendant-Appellant Life Investors Insurance Company of America (Life Investors). I Aplt.-App. at 196-98. As explained in more detail below, we agree with the rulings of the district judge and affirm, remanding for the district judge to award appellate attorney's fees.

# I

## *Background*

### A

The subsidiary facts are not in dispute. As related in the order of the district judge which granted summary judgment for Life Investors, the facts are as follows.

In 1993, Life Investors assumed an accidental death policy bought by the decedent Marvin Johnson. I Aplt. App. 179. The policy provided an accidental death benefit of $200,000, hospitalization benefits of $200.00 per day and $250.00 per day for intensive care. *Id.* Plaintiff/Appellee Stephen Johnson is the beneficiary under the policy and Plaintiff/Appellee LaJuan Johnson is the personal representative of Marvin Johnson's estate.

In 1974, at the age of 42, Johnson was diagnosed with myotonic dystrophy, a form of muscular dystrophy. *Id.* at 180. Although the disease caused his muscles to weaken, Johnson remained active. *Id.* He occasionally fell due to a loss of balance. *Id.* In 1991, Mr. Johnson fell forward down a set of stairs and received treatment in the hospital for minor injuries. *Id.*

On July 29, 1995, Mr. Johnson stumbled and fell backward down the stairs to his basement. *Id.* at 180. On July 30, 1995, Johnson was admitted to a hospital for a cervical spine fracture in his neck. On August 1, 1995, Johnson developed pneumonia and the doctors had difficulty intubating him because of his neck fracture. *Id.* On August 2, 1995, when it became apparent that Mr. Johnson could no longer breathe on his own, his family decided to withdraw artificial life support measures. *Id.* Johnson died that day and his physician, Dr. Edward Campbell, listed the immediate cause of death on the death certificate as pneumonia due to, or as a consequence of, a cervical spine fracture, and the underlying cause of death as myotonic dystrophy. *Id.* at 180. The doctor identified the manner of death as an "accident." *Id.*

Life Investors denied the plaintiffs' claims under the insurance policy, claiming that Johnson's hospitalization and death were not covered as a result of his preexisting illness. *Id.* Life Investors relied on the language in the policy excluding death caused by sickness and defining injury as that caused by an accident "independent of all other causes." *Id.* Plaintiffs then brought this diversity suit which is the subject of this appeal.

In an earlier proceeding, the district court granted plaintiffs summary judgment against Life Investors and Monumental Life Insurance Company, which both issued policies in favor of Marvin Johnson. Summary judgment against both companies was entered on the reasoning that the companies were estopped to deny coverage because they failed to disclose the sickness exclusion prominently, as required by Utah insurance regulations. Order and Judgment at 5-6.[1] On appeal, we reversed because the Life Investors's policy was issued before the enactment of the disclosure regulations and, therefore, Life Investors was not estopped from denying coverage.[2] *Johnson v. Life Investors of Am.*, 2000 U.S. App. Lexis 16049 (10th Cir. 2000).

On remand, the district court again granted summary judgment for the plaintiffs because it construed the terms of the policy as not excluding coverage for cases where an accident was caused by illness. Life Investors now appeals.

---

[1]The disclosure regulation provides:
> Accident-Only Disclosure. All accident-only policies shall contain a prominent statement on the first page of the policy, or attached thereto, in either contrasting color or in boldface type at least equal to the size of type used for policy captions, as follows: "This is an accident-only policy, and it does not pay benefits for loss from sickness."

Utah Admin. Code R590-126-6G.

[2]In that same appeal, we also affirmed summary judgment for the plaintiffs in their claim against Monumental Life Investors company based upon a separate accident insurance policy that was issued after the effective date of Utah's disclosure regulation.

## II

### *The District Court Ruling*

The district court granted plaintiffs summary judgment on the ground that the insurance policy issued by Life Investors did not exclude coverage in cases where an accident is caused by illness. In coming to that conclusion, the district court primarily relies upon *Browning v. Equitable Life Assurance Society*, 94 Utah 532; 72 P.2d 1060, 1072 (Utah 1937) (*Browning I*). The insurance policy in *Browning* covered losses "resulting directly and independently of other causes, from bodily injuries effected . . . solely through external, violent, and accidental means" and the insured's disability was caused by a combination of an accidental sprain of his finger and preexisting toxemia. *Id.* Nonetheless, the Utah court held that the insurance policy provided coverage, reasoning that "If the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or a slipping, the drowning, in such case, would be the proximate and sole cause of the disability or death . . . ." *Id.* at 1076 (citations omitted).

Turning to the facts in this case, the district court observed that the insurance policy at issue confined the scope of its coverage to those events that "create[] a loss due, directly and independently of all other causes, to [an] accidental bodily injury." Applying *Browning I* to these facts, the district court reasoned that even if illness had caused Marvin Johnson's fall, he would be covered by the policy since it was the accidental fall

that was the "proximate and sole" cause of his injury. The district court also noted that Life Investors could have but did not explicitly exclude coverage where illness is the cause of an accident. Accordingly, the district court concluded that the plaintiffs were entitled to summary judgment against Life Investors.

The district court also awarded plaintiffs attorneys fees as the party injured by Life Investors's breach of the express terms of the insurance contract under *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 468 (Utah 1996).

## III

*Discussion*

A grant of summary judgment by the district court is reviewed *de novo*. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326. This court also reviews district court determinations of state law *de novo*. *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 495 (10th Cir. 1992).

A

On appeal, Life Investors argues that the coverage requirement that a loss must be created by an accidental bodily injury "independently of all other causes" precludes coverage here. Appellant's Opening Brief at 14. In addition to that coverage requirement, Life Investors relied on the language in the policy excluding death caused by sickness, and defining injury as that caused by an accident "independent of all other causes." Order Granting Summary Judgment for Plaintiffs at 2, Addendum to Appellant's Opening Brief. The parties filed cross-motions for summary judgment. The plaintiffs' motion sought the benefits under the policy, prejudgment interest and attorney's fees. Defendant Life Investors sought a ruling of no coverage or, in the alternative, a ruling that there is a question of fact as to coverage that must go to the jury. The district judge granted summary judgment for the plaintiffs.

The Utah Supreme Court in *Browning v. Equitable Life Assur. Soc. of the United States,* 72 P.2d 1060, 1073 (Utah 1937) (*Browning I*), in a similar insurance case, stated:

> This jurisdiction, like many others, has declared in favor of a liberal
> construction in favor of the insured to accomplish the purpose for which the
> insurance was taken out and for which the premium was paid. *Colovos v.
> Home Ins. Co. of New York,* 82 Utah 401, 28 P.2d 607 . . . .

*Browning I* upheld a judgment for the insured plaintiff who suffered an injury to his finger, disabling him from performing his duties as a dentist. He recovered disability payments under his policy for interruption of his professional duties. The fall involved in *Browning* and that of Johnson in the instant case present similar accidental circumstances.

We are persuaded that under the interpretation of such policy provisions in Utah, the district judge correctly upheld the claim of Johnson for recovery. We are convinced that the district judge properly concluded as follows:

> This court finds that an ordinary meaning for the term "loss" as used in the context of Defendant's policy is hospitalization and death. If Defendant wanted to exclude coverage where sickness is the cause of an accident, rather than the cause of the loss, it could have easily written that specifically into the policy. Having not excluded coverage where sickness is the cause of the accident, the plain language of the policy provides coverage in this instance. Accordingly, this court grants Plaintiff's motion for summary judgment as to coverage and pre-judgment interest.

Order at 6.

Nor does the policy's exclusionary clause dictate a different result. Under Utah law, "insurance policies should be strictly construed against the insurer and in favor of the insured because they are adhesion contracts drafted by the insurance companies." *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 522 (Utah 1993). In this case, the policy at issue contained an exclusionary clause that provided the policy "does not insure for any <u>loss</u> resulting from any injury caused or contributed to by, or as a consequence of . . . any sickness or infirmity . . . ." II Aplt.-App. at 139 (emphasis added).

As noted above, the ordinary meaning for the term "loss," in the context of such an insurance policy, is hospitalization and death. Therefore, when "strictly construed against" Life Investors, this exclusionary clause excludes coverage only where the sickness or infirmity "caused or contributed to" the hospitalization and death. In other words, coverage is denied under this policy only where the illness causes the

hospitalization and death, e.g., heart attack leading to death, and not where the illness causes an accident that causes the death, e.g., a mild heart attack while driving leading to a fatal car accident.

If, as the district court noted, Life Investors wanted to exclude coverage where the *accident* rather then the loss was caused by sickness or infirmity, it could have done so. One way would have been to include the exclusion clause at issue in *Browning v. Equitable Life Assur. Soc.*, 80 P.2d 348 (Utah 1938) (*Browning II)*, which was the reconsideration of that court's earlier decision in *Browning I*, 72 P.2d at 1060.

In *Browning II*, the insurance policy provided: "The insurance . . . shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly, by . . . any other kind of disease." *Browning II*, 80 P.2d at 351. Thus, in that case, even a strict construction of the exclusionary clause would lead to the conclusion that the policy does not cover *accidents* caused by disease. As such, the Utah Supreme Court concluded the exclusionary clause meant that: "If the accident or injury resulting in the disability or loss was produced, caused, set in motion or operation by disease or infirmity, then it is indirectly caused by such disease or infirmity and is to be regarded as the result of sickness and not of accident." *Id.* at 352.

In this case, the insurance policy did not contain the explicit exclusion of coverage that the policy at issue in *Browning II* did. Therefore, as noted above, a strict construction of this policy leads to the conclusion that the policy excludes coverage only

where the sickness or infirmity directly causes the loss.  Since it is undisputed that the immediate cause of Johnson's loss was a fall, it is irrelevant under the terms of this policy whether the fall was caused by his myopic dystrophy.  Accordingly, summary judgment for Johnson was appropriate.

B

*Attorney's Fees*

Life Investors argues that the language in *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461 (Utah 1996), that permits an award of attorney fees against an insurer for breach of express contract is mere dicta, that the language in *Billings* has not been applied in Utah and therefore should not be followed.  We do not agree.

In *Billings* the Utah Supreme Court stated clearly:

Attorney fees may be recoverable as consequential damages flowing from an insurer's breach of either the express or the implied terms of an insurance contract.  See *Canyon Country Store v. Bracey*, 781 P.2d 414, 420 (Utah 1989), n.4.

*Billings*, 918 P.2d at 468.

As the *Billings* opinion shows, 918 P.2d at 464, the jury there returned a special verdict finding that Union Bank had breached both the covenant of good faith and fair dealing and the express coverage provision of the insurance contract.  There was a dispute as to the amount of the attorney's fees in *Billings*, but the right to the recovery of fees was not denied by the Utah Supreme Court.  In fact, the separate opinion of Justice Howe,

- 10 -

concurring and dissenting, recognized that the majority had sanctioned the award of attorney's fees as an element of consequential damages for both the breach of the implied covenant of good faith and fair dealing and the express provisions of the contract. 918 P.2d at 469.

We are not persuaded by the arguments of Life Investors that the ruling on attorney's fees in *Billings* was mere dicta. Moreover in making a prognostication of what the highest state court will decide, the decisions of lower state courts and other federal courts are of "somewhat less importance" than even considered dicta by the state's "highest court." *Florom v. Elliott Mfg.*, 867 F.2d 570, 580 (10th Cir. 1989); see also *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 and n.21 (3rd Cir.), *cert. denied*, 449 U.S. 976 (1980).

In sum, we are persuaded that we should affirm both the ruling of the district court granting summary judgment for the Plaintiff Appellees and the award of attorney's fees for services in the district court. A request is made by the Appellees for costs and reasonable attorney's fees incurred on this appeal. Appellees' Brief at 27. These matters should be determined in the first instance by the district court.

Accordingly, the judgment is AFFIRMED with the appellate costs and fees to be determined on remand.

IT IS SO ORDERED.

ENTERED FOR THE COURT

William J. Holloway, Jr.
Circuit Judge