CAMBELT INTERNATIONAL CORPORATION, a Utah corporation, and The Travellers Insurance Company, a Connecticut corporation, Plaintiffs and Appellants,

v.

Bob DALTON, individually and dba Shannon Service Company, Defendant and Respondent.

No. 20034.

Supreme Court of Utah.

Nov. 5, 1987.

DeLyle H. Condie, Reid Tateoka, Salt Lake City, for plaintiffs and appellants.

Jackson B. Howard, Provo, for defendant and respondent.

**ZIMMERMAN, Justice:**

Plaintiff/counterclaim defendant Cambelt International Corporation ("Cambelt") appeals from a jury verdict rejecting its claims for breach of contract, negligent workmanship, and breach of express and implied warranties against defendant/counterclaimant Bob Dalton, doing business as Shannon Service Company. The jury awarded Dalton $35,624 in damages against Cambelt on a counterclaim for services rendered. We affirm.

Cambelt contracted with a third party, NOWSCO, to erect a four-tank sand storage unit in Farmington, New Mexico. Cambelt had erected a similar structure in Vernal, Utah, and Dalton had worked on the Utah project. After Cambelt contracted with NOWSCO for the Farmington facility, a Cambelt representative asked Dalton to become a subcontractor responsible for erecting the support structures for the tanks. According to Dalton's testimony, he indicated to the Cambelt representative that he could not act as a subcontractor because he was engaged in other work. Cambelt then asked Dalton to hire out some of his employees, stating that they would be supervised by Cambelt's service engineer. Dalton agreed to furnish a crew, and Cambelt agreed to compensate Dalton. This agreement was oral.

Cambelt later sent Dalton a purchase order, which Dalton never signed. The purchase order was a standard form applicable to the purchase of goods and contained certain standard warranties.

Dalton's crew, under the supervision of Cambelt's service engineer, erected the tank support platform using bolts provided by Cambelt. However, Dalton's crew did not weld the joints on the platform. Cambelt's service engineer inspected the unit and determined that Dalton's crew had completed its work. The crew was then discharged and returned to Vernal. Cambelt put the tanks into place, completed the project, and turned it over to the purchaser, NOWSCO. When NOWSCO loaded one of the tanks with 600,000 pounds of sand, the support structure collapsed, damaging the three other tanks.

NOWSCO, Cambelt, and Dalton all agreed that the immediate cause of the collapse was the failure of the supporting bolts. The joints which had been bolted together should also have been welded.

Cambelt brought suit against Dalton, contending that Dalton was responsible for the proper erection of the supporting structure and that Dalton's crew improperly performed the job. Cambelt also argued that Dalton had made express and implied warranties regarding the level of workmanship on the structure. This contention was based, in part, on the unsigned purchase order.

Dalton disagreed with Cambelt's characterization of their relationship. Dalton claimed that he did not agree to erect the supporting structure, but agreed only to furnish a crew to Cambelt and that Cambelt was to provide supervision, plans, and materials. Therefore, Dalton argued, he had done nothing more than hire out his employees to Cambelt, and Cambelt was directly chargeable with their conduct. Dalton also contended that the structure would have failed, even if it had been welded properly, because of design deficiencies. Dalton counterclaimed for the value of the crew's labor, basing the counterclaim alternatively on an oral contract or on quantum meruit. The jury found no cause of action on Cambelt's claims and awarded Dalton $35,642 on his counterclaim.

On appeal, Cambelt contends that the trial court erred in admitting portions of the testimony of Dalton's expert witness, that the trial court did not instruct the jury properly on the issues of contributory negligence and comparative negligence, and that on the facts, the jury could not have found that Dalton gave no express or implied warranties. Some of the errors Cambelt addresses might justify a reversal if this case had gone to the jury on special verdicts or interrogatories and the jury had found for Dalton on one of the issues to which the claims of error are directed. However, the case went to the jury on a general verdict. As explained below, because we find support for that verdict on at least one theory against which no error is

charged, it is unnecessary to consider Cambelt's various arguments unless we first conclude that it was error to submit the case on a general verdict.

■ This was a complicated case with a number of conflicting claims and several alternative theories for recovery. Cambelt submitted special verdicts to the court, but they were not given. The use of special verdicts or interrogatories is a matter for the trial court's sound discretion. Utah R.Civ.P. 49; *Reiser v. Lohner*, 641 P.2d 93, 98 (Utah 1982). Special verdicts or interrogatories to the jury might have assisted the jury in sorting out the difficult issues presented. Indeed, the general verdict that the court submitted to the jury may well have permitted the jurors to avoid grappling with those complex issues. However, Cambelt did not object to the trial court's failure to provide the jury with special verdicts. Utah Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto. In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection." Since Cambelt did not object below, it cannot raise the failure to give special verdicts or interrogatories on appeal. *See, e.g., Jensen v. Eakins*, 575 P.2d 179, 180 (Utah 1978); *Morgan v. Pistone*, 25 Utah 2d 63, 64, 475 P.2d 839, 840 (1970).

It is true that rule 51 also provides that this Court "in its discretion and in the interests of justice" may review an instructional error which has not been properly preserved. However, Cambelt has not met its burden of showing special circumstances warranting such a review. *See, e.g., E.A. Strout Western Realty Agency, Inc. v. W.C. Foy & Sons, Inc.*, 665 P.2d 1320, 1322 (Utah 1983). Thus we do not consider whether there was error in the failure to give special verdicts or interrogatories.

■ Therefore, we are faced with a judgment based upon a general verdict rejecting all of Cambelt's claims against Dalton and granting Dalton judgment on his counterclaim against Cambelt. When a case is submitted to a jury on several alternative

grounds and a general verdict is returned, we will affirm if the jury properly could have found for the prevailing party on any of the theories comprehended by the general verdict. *E.g., Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 835 (Utah 1984) (citing *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293, 301–02 (Utah 1982)).

The errors that Cambelt raises on appeal all relate to Cambelt's theory that Cambelt and Dalton entered into an oral contract under which Dalton would act as a subcontractor. Dalton's defense and his counterclaim were based on the theory that he did not contract to construct the storage tank support platform, but, instead, agreed only to provide Cambelt with a crew. Dalton claimed that he did not take any responsibility for supervising the job or assuring that the platform was built in any particular manner.

At trial, oral testimony by Dalton fully supported his theory of the case. Cambelt's testimony contradicted it. The jury's verdict rejecting Cambelt's claims and awarding Dalton some $35,000 in damages is entirely consistent with its having accepted Dalton's testimony and rejected Cambelt's as to the nature of the relationship between the parties. The resolution of this factual dispute is a matter we leave to the jury. We cannot say that the evidence on this issue "so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case." *E.A. Strout Western Realty Agency, Inc. v. W.C. Foy & Sons, Inc.,* 665 P.2d at 1322 (citing *Ute–Cal Land Development Corp. v. Sather,* 605 P.2d 1240 (Utah 1980)). The burden on an appellant to establish that the evidence does not support the jury's verdict and the factual findings implicit in that verdict under such a circumstance is quite heavy. We consider the evidence in the light most favorable to the verdict, and we will not overturn that verdict when it is supported by substantial and competent evidence. *Von*

*Hake v. Thomas,* 705 P.2d 766, 769 (Utah 1985). "To successfully attack the verdict, an appellant must marshall all the evidence supporting the verdict and then demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is insufficient to support it." *Id.* (citing *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985));[1] *Morgan v. Quailbrook Condominium Co.,* 704 P.2d 573, 577 n. 3 (Utah 1985). Therefore, the general verdict in favor of Dalton is sustainable without regard to whether errors may have been committed with respect to other issues also submitted to the jury. *Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d at 835.

The verdict is affirmed. Costs to respondent.

HALL, C.J., STEWART, Associate C.J., and DURHAM, J., concur.

HOWE, Justice (concurring).

I reluctantly concur, recognizing that the majority opinion in *Barson v. E.R. Squibb & Sons, Inc.,* 682 P.2d 832 (Utah 1984), to which opinion I dissented, announced the rule that a general verdict will be sustained if any one of the theories or defenses advanced by the prevailing party and on which the jury could have relied in finding for the prevailing party was not infected with error. In the instant case, it is impossible for us as a reviewing court to know (1) whether the jury returned a verdict in favor of Dalton because they found that he did not enter into a contract with Cambelt to construct the platform, but instead had only agreed to provide Cambelt with the crew, or (2) whether the jury found in favor of Dalton because even though he had entered into a contract with Cambelt, he had no liability for the collapse of the platform because it fell due, in whole or part, to some fault on the part of Cambelt. The trial court admitted evidence of contributory negligence by Cambelt over its objection that contributory negligence was not a

---

**1.** In *Scharf v. BMG Corp.,* we stated this standard of review as it then applied with respect to findings of fact entered in a judge-tried civil matter. The promulgation of Utah Rule of Civil Procedure 52(a), which mandates that a trial judge's findings of fact "shall not be set aside unless clearly erroneous," alters this standard somewhat in judge-tried cases. Still, the standard has continuing validity in regard to a jury's factual findings.

defense to its action based upon breach of warranty. After having admitted that evidence, the trial court refused to give to the jury any instructions on the law in this state on contributory negligence and comparative negligence, even though the defendant submitted proposed instructions on that subject. Both the admission of such evidence and the refusal to give such instructions are Cambelt's major assignments of error on this appeal.

We now refuse to consider the propriety of the trial court's action, indulging in the presumption that the general verdict was reached by the jury on the ground that there was no construction contract between the parties, a defense to which the claimed errors do not pertain. As expressed in my dissenting opinion in *Barson v. Squibb, supra,* I would not follow such practice in our appellate review for the reasons discussed and based upon the authority cited therein.

For what little consolation it may be to Cambelt, if the jury strictly followed the instructions given them, any contributory negligence or fault of Cambelt should not have influenced their verdict. The instructions made it clear that if they found that Cambelt delivered plans and specifications to Dalton which were part of the agreement between them, and Dalton failed to follow them and thereby constructed a faulty and defective platform, they should return a verdict in favor of Cambelt. Contributory negligence or fault on the part of Cambelt was not mentioned as a factor they should consider.