2009 UT App 154

Dolores CLAYTON, Frederick Clayton, Estate of Anthony Clayton, and Kellie Montoya, Plaintiffs, Appellants, and Cross-appellees,

v.

FORD MOTOR COMPANY, Utah Auto Collection, and Warren Super Ford Store, Defendants, Appellee, and Cross-appellant.

No. 20070517–CA.

Court of Appeals of Utah.

June 11, 2009.

Thor O. Emblem and Tracy L. Emblem, Escondido, California, and Matthew H. Raty, Sandy, for Appellants and Cross-appellees.

Dan Larsen, Kimberly Neville, and Troy L. Booher, Salt Lake City, for Appellee and Cross-appellant.

Before Judges GREENWOOD, THORNE, and ORME.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Following an automobile accident in which Anthony Clayton was killed and his fiancée, Kellie Montoya, was injured, Mr. Clayton's parents, Frederick and Dolores Clayton, and Ms. Montoya (collectively Plaintiffs) brought this suit against Ford Motor Company (Ford) alleging strict liability for fourteen product defects, wrongful death, negligence, breach of express and implied warranty, negligent infliction of emotional distress, violation of the consumer sales act,[1] and fraud. Plaintiffs also requested punitive damages. Following trial, the jury returned a verdict entirely in Ford's favor. Plaintiffs moved for a new trial arguing several points of legal error, but the trial court denied this motion and entered final judgment. Plaintiffs now appeal, asking us to vacate the jury's verdict. We affirm.

## BACKGROUND

¶ 2 Mr. Clayton and his fiancee, Ms. Montoya, were driving a 1997 Ford Explorer (the Explorer) on November 27, 1998. The couple was traveling east on I–80 about four miles from Evanston, Wyoming. There was no inclement weather, the visibility was clear, and the pavement was dry. The Explorer drifted off the highway onto the shoulder of the road and rolled four times through the median. Mr. Clayton was ejected through the open driver's door during the rollover. He was killed and Ms. Montoya was injured.

¶ 3 Ford asserts that Mr. Clayton was not wearing a seat belt, was inattentive, and, when the Explorer drifted off the road, he overcorrected, causing the Explorer to leave the road and roll. Plaintiffs assert that the accident was not caused by Mr. Clayton's inattentiveness but by a break in the Explorer's right front steering tie rod. Plaintiffs argue that it was Mr. Clayton's custom and habit to wear his seat belt and offered explanations as to how the seat belt may have unlatched during the accident. Plaintiffs further assert that the driver's door latch (the door latch) opened during the rollover because it, too, was defective. The jury made only one finding of fact—that the Explorer was not defective.

## ISSUES AND STANDARDS OF REVIEW

¶ 4 Plaintiffs present twelve issues on appeal. Because we affirm on all issues, we do not address Ford's cross-appeal issues except its request for attorney fees. Both parties ask for attorney fees on appeal.

■ ¶ 5 I. Did the trial court err by denying Plaintiffs' motion for a new trial based on Plaintiffs' theory that Ford physically altered the door latch after the accident? A trial court's decision to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 804 (Utah 1991).

■ ¶ 6 II. Did the trial court err in excluding impeachment evidence? A trial court has broad discretion in excluding evidence for lack of foundation, and we review for an abuse of that discretion. *See Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979).

■■ ¶ 7 III. Did the trial court abuse its discretion in using Ford's special verdict form rather than Plaintiffs' proposed special

---

1. This claim was dismissed during summary judgment proceedings.

verdict form? "The use of special verdicts or interrogatories is a matter for the trial court's sound discretion." *Cambelt Int'l Corp. v. Dalton,* 745 P.2d 1239, 1241 (Utah 1987). Further, a party must timely object to errors in a special verdict form to preserve the issue for appeal. *See Moore v. Smith,* 2007 UT App 101, ¶ 31, 158 P.3d 562.

¶ 8 IV. Did the trial court err as a matter of law by instructing the jury with Jury Instruction Nos. 27, 30, and 31? Jury instructions are reviewed for correctness. *See Child v. Gonda,* 972 P.2d 425, 429 (Utah 1998). Jury instructions, however, are reviewed in their entirety and are affirmed "'when the instructions taken as a whole fairly instruct the jury on the law applicable to the case.'" *Brewer v. Denver & Rio Grande W. R.R.,* 2001 UT 77, ¶ 38, 31 P.3d 557 (quoting *State v. Robertson,* 932 P.2d 1219, 1231 (Utah 1997)).

■ ¶ 9 V. Did the trial court err in bifurcating the trial into liability and damages phases? The trial court's decision to bifurcate a trial falls within its inherent power to manage its docket and, accordingly, is reviewed for an abuse of discretion. *See Walker Drug Co. v. La Sal Oil Co.,* 972 P.2d 1238, 1244 (Utah 1998).

¶ 10 VI. Did the trial court err by excluding several of Ford's internal engineering documents and memoranda offered by Plaintiffs? A trial court's decision to exclude evidence is reviewed for an abuse of discretion. *See State v. Whittle,* 1999 UT 96, ¶ 20, 989 P.2d 52.

■ ¶ 11 VII. Did the trial court err in directing a verdict in Ford's favor on the marketing/fraud issue when there were questions of fact warranting the jury's deliberation and resolution? We review for correctness the grant of a motion for directed verdict. *See Goebel v. Salt Lake City S. R.R. Co.,* 2004 UT 80, ¶ 10, 104 P.3d 1185.

■ ¶ 12 VIII. Did the trial court's actions and remarks coerce a quick and unreasoned jury verdict? A trial court's management of its docket and trial schedule is reviewed for an abuse of discretion. *See Berrett v. Denver & Rio Grande W. R.R. Co.,* 830 P.2d 291, 293 (Utah Ct.App.1992). To preserve an issue for appellate review, a party must have objected at trial or demonstrate plain error. *See State v. King,* 2006 UT 3, ¶ 13, 131 P.3d 202.

■ ¶ 13 IX. Did the trial court err in leaving Juror No. 3 on the jury after the juror made statements to other jurors indicating he had made up his mind? The decision to allow a juror to remain on a panel is reviewed for abuse of discretion. *See Harding v. Bell,* 2002 UT 108, ¶ 14, 57 P.3d 1093. To preserve an issue for appellate review, a party must have objected in the trial court at trial or demonstrate plain error. *See King,* 2006 UT 3, ¶ 13, 131 P.3d 202.

¶ 14 X. Did the trial court err in allowing Ford to present statistical evidence of other rollover accidents? This court reviews decisions to admit evidence for abuse of discretion. *See Whittle,* 1999 UT 96, ¶ 20, 989 P.2d 52.

■ ¶ 15 XI. Did the trial court err by allowing Trooper Ross Pace, the officer who filed the initial accident report, to testify as an expert about his theories of causation? A trial court is afforded considerable discretion in determining whether adequate foundation has been laid for the admission of evidence. *See Tjas v. Proctor,* 591 P.2d 438, 440 (Utah 1979). A party must object to the admission of evidence at trial to preserve the issue for appeal. *See State v. Cram,* 2002 UT 37, ¶ 9, 46 P.3d 230.

■ ¶ 16 XII. Should the judgment be reversed due to cumulative error? Reversal is required where the effect of several errors undermine our confidence in the fairness of the trial. *See Whitehead v. American Motors Sales Corp.,* 801 P.2d 920, 928 (Utah 1990).

## ANALYSIS

### I. Motion for a New Trial

#### A. Tampering

■ ¶ 17 At trial, Plaintiffs claimed that the door latch was defective, causing the door to open during the rollover. Ford argued that the combined force of Mr. Clayton fall-

ing against the door and the impact from rolling caused the door latch to open. The jury found that the Explorer was not defective. Following trial, Plaintiffs filed a motion for a new trial or a judgment notwithstanding the verdict pursuant to rule 59 of the Utah Rules of Civil Procedure (rule 59 motion) on the basis that there was an "[i]rregularity in the proceedings of the court." *See* Utah R. Civ. P. 59(a)(1).[2]

¶ 18 In their rule 59 motion, Plaintiffs asserted that Ford's expert, Packer Engineering, tampered with the door latch prior to trial by adjusting its fork bolts in a way that would support Ford's theory of why the door latch opened. Plaintiffs claim that they did not identify the tampering until trial, when enlarged photographs revealed tampering. The trial court denied this motion and Plaintiffs now appeal.

▉ ¶ 19 Ford first argues that the issue was not preserved. It was, however, raised in Plaintiffs' amended motion for a judgment notwithstanding the verdict and a new trial.[3] Because Plaintiffs' amended motion was timely filed and the trial court heard oral argument on the matter, the issue was preserved, even though the "irregularity of the proceedings" argument was not specifically raised until Plaintiffs' amended motion. *See LeBaron & Assocs. v. Rebel Enters., Inc.,* 823 P.2d 479, 482–83 (Utah Ct.App.1991).

¶ 20 The trial court stated that it was "of the opinion there is ample evidence to support the jury's finding regarding the door latch." On appeal, Plaintiffs have explained in great detail their theory about the door latch. However, Plaintiffs have failed to " 'marshal all the evidence in support of the [jury] finding and then demonstrate that the

evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below.' " *Chen v. Stewart,* 2004 UT 82, ¶ 76, 100 P.3d 1177 (quoting *Wilson Supply, Inc. v. Fradan Mfg. Corp.,* 2002 UT 94, ¶ 21, 54 P.3d 1177); *see* Utah R.App. P. 24(a)(9) (requiring parties to "marshal all record evidence that supports the challenged finding"). We note that there was extensive testimony and evidence presented at trial concerning the design and operation of the door latch that Plaintiffs fail to detail on appeal. Furthermore, Ford provided a detailed refutation of Plaintiffs' tampering claim in its response to Plaintiffs' rule 59 motion. Plaintiffs' claim relies on photographs of the door latch. The relevance of the photographs, however, is undermined by the fundamental disagreement of the parties as to the functioning of the door latch at the time of the accident. They essentially agreed that the door latch was partially open after the accident but disagreed about the causation. Plaintiffs argued that the door latch was partially open because it was defective. To the contrary, Ford urged that the door latch was not defective but the door was forced open by the rotational force of the crash, multiple rollovers, and the pressure of Mr. Clayton against the door without the restraint of a seat belt. The trial court observed that the jury had found no defects in the vehicle and that the photographs were insufficient to invalidate that finding. We agree and determine the trial court acted within its discretion in denying the rule 59(a)(1) motion. *See Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 804 (Utah 1991).

### B. The Gilberg Affidavit

▉ ¶ 21 Prior to the trial court's ruling on the rule 59 motion, Plaintiffs submitted an

---

**2.** Plaintiffs originally filed a motion for a new trial along with their motion for a judgment notwithstanding the verdict, requesting a new trial on the bases of rules 59(a)(6) ("[i]nsufficiency of the evidence") and 59(a)(7) ("[e]rror in law") of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 59(a)(6), (7). Several weeks after filing this original motion, Plaintiffs amended their motion to add the "[i]rregularity in the proceedings of the court" claim found in rule 59(a)(1). *See id.* R. 59(a)(1).

**3.** The trial court correctly dismissed as untimely Plaintiffs' motion for judgment notwithstanding

the verdict because Plaintiffs had failed to timely move for a directed verdict. "The failure of a party to make a motion for a directed verdict ... forecloses the trial court from consideration of a motion for judgment notwithstanding the verdict." *Pollesche v. Transamerican Ins. Co.,* 27 Utah 2d 430, 433 n. 1, 497 P.2d 236 (1972); *see also* Utah R. Civ. P. 50(b) ("[A] party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict.").

ex parte motion for leave to file the post-trial affidavit of Andrew Gilberg, which was intended to counter statements made during oral argument on the motion concerning Mr. Gilberg's inspection of the Explorer in 2005. The affidavit addressed the action of Mr. Gilberg when he inspected the Explorer but was only tangential to the tampering issue. We therefore conclude that the trial court's refusal to consider the affidavit was not harmful and did not constitute an abuse of discretion. *See State v. Evans*, 2001 UT 22, ¶ 20, 20 P.3d 888 (explaining "harmless error is an error that is sufficiently inconsequential that there is no reasonable likelihood that it affected the outcome of the proceedings").

## II. Impeachment Evidence

■ ¶ 22 During trial, Plaintiffs sought to introduce the written expert opinion of and photographs taken by Thomas Tiede, a former Ford engineer, (the Tiede report) to impeach Ford's door latch expert, Dr. Caulfield. Ford had originally designated Mr. Tiede as its door latch expert but later replaced him with Dr. Caulfield. Dr. Caulfield disagreed with Mr. Tiede's findings and conclusions concerning why the door latch opened during the rollover. During trial, Plaintiffs sought to admit the Tiede report through Dr. Caulfield, but the trial court excluded it because Plaintiffs could not lay a sufficient foundation.

¶ 23 On appeal, Plaintiffs argue that the Tiede report should have been admitted because it was proper impeachment evidence. They argue that either foundation was properly provided because Dr. Caulfield considered the Tiede report in reaching his opinions in the case, or they were not required to lay foundation because "Ford in essence *vouched* for [the] Tiede report and its contents by exchanging it pursuant to Rule 26 [of the Utah Rules of Civil Procedure]." Plaintiffs refer to the advisory committee note for rule 26(a)(3) of the Utah Rules of Civil Procedure (discussing disclosure of expert testimony during discovery), which says "[i]n effect, the report will serve in lieu of responses to standard interrogatories." *See*

Utah R. Civ. P. 26(a)(3) (Advisory Committee Notes).

¶ 24 We disagree with Plaintiffs' contentions. The trial court determined that Dr. Caulfield could not properly lay the foundation for the Tiede report because he was not involved in its preparations. The trial court stated that it was insufficient that Dr. Caulfield said, in essence, "I am aware of this and I rejected it." When questioned about his reliance on the Tiede report, Dr. Caulfield stated that he had read the Tiede report, eliminated it from the possibilities, and "pretty much did [his] own work." Furthermore, Plaintiffs attempted to use the Tiede report on cross-examination, not direct, which meant they could only have used the Tiede report to respond to Dr. Caulfield's testimony—not as evidence supporting their theory of the case. The Tiede report was not sufficiently connected to Dr. Caulfield's testimony to justify its admission. The trial court has broad discretion in excluding evidence for lack of foundation, *see Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979), and we conclude the trial court did not abuse that discretion in excluding the Tiede report.[4]

## III. Special Verdict Form

■ ¶ 25 The special verdict form used in this case was submitted by Ford and had only one question relating to the safety of the Explorer: "When the . . . Explorer left Ford Motor Company was it in a defective condition, unreasonably dangerous to [Mr. Clayton and Ms. Montoya]?" Plaintiffs had proposed a special verdict form that more specifically delineated various potential flaws in the Explorer. Plaintiffs now argue that the form used "was particularly egregious because it took some of the defect issues away from the jury without a summary judgment motion or directed verdict. The jury was required to deliberate on all theories. A special verdict form cannot mislead the jury."

¶ 26 Ford first argues that Plaintiffs failed to preserve this issue for appeal by not specifically objecting to the special verdict form on the grounds that it failed to list each defect separately. Ford further argues that

4. Further, Plaintiffs' interpretation of rule 26(a)(3) is too broad. We cannot say that the

mere exchange of documents "vouches" for their credibility. *See* Utah R. Civ. P. 26(a)(3).

even if the issue was preserved, the trial court did not abuse its discretion in allowing the special verdict form because (1) there is no evidence that the single interrogatory confused the jury, (2) Plaintiffs argued each of their theories in closing argument, and (3) several jury instructions addressed Plaintiffs' separate theories.

¶ 27 Plaintiffs compare their case to *Cambelt International Corp. v. Dalton*, 745 P.2d 1239 (Utah 1987), in which a general verdict form was given despite the plaintiff's suggestion (on appeal) that a special verdict form should have been used. *See id.* at 1241. In *Cambelt*, the court determined that because the plaintiff had not objected during trial, the issue was waived. *See id.* In dicta, however, the *Cambelt* court stated: "Special verdicts or interrogatories to the jury might have assisted the jury in sorting out the difficult issues presented. Indeed, the general verdict that the court submitted to the jury may well have permitted the jurors to avoid grappling with those complex issues." *Id.*

¶ 28 However, in this case, Plaintiffs have offered no evidence that the jurors did *not* consider each issue before making their final decision. Accordingly, we cannot conclude that the trial court abused its discretion in selecting and submitting Ford's special verdict form. *See generally id.* Furthermore, Plaintiffs failed to preserve the issue by not objecting to the form for the reasons asserted on appeal. *See Moore v. Smith*, 2007 UT App 101, ¶ 31, 158 P.3d 562.

### IV. Jury Instructions

¶ 29 Plaintiffs challenge three jury instructions: Nos. 27, 30, and 31. We address each in turn.

#### A. Number 27

¶ 30 Jury Instruction No. 27 states:

The manufacturer has a duty to design and manufacture a product to eliminate any unreasonable risk of foreseeable injury.

However, there is no duty to make a safe product safer. A manufacturer has no duty to refrain from marketing a non-defective product when a safer model is available, or to inform the consumer of the availability of the safer model.

¶ 31 Plaintiffs object to Jury Instruction No. 27 primarily on the grounds that it is not based on any of the Model Utah Jury Instructions (MUJI). However, jury instructions in Utah do not have to be based on MUJI: "[T]he MUJI are merely advisory and do not necessarily represent correct statements of Utah law." *Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357, 359 (Utah 1997). The language of Jury Instruction No. 27 is derived from *Slisze v. Stanley–Bostitch*, 1999 UT 20, ¶ 10, 979 P.2d 317, and accordingly, correctly states the law in Utah. Plaintiffs also argue that Jury Instruction No. 27 is argumentative because it "insinuate[s] that the trial court was suggesting the Explorer was safe. Such an instruction amounts to an improper superfluous judicial comment on the evidence and as such it was prejudicial." We disagree with this reading of Jury Instruction No. 27; it merely restates Utah law. Plaintiffs also suggest the language had the potential to confuse the jury on the issue of duty. Again, we do not agree.

#### B. Number 30

¶ 32 Jury instruction No. 30 reads:

The law provides that any person in a motor vehicle on a public highway shall keep a proper lookout. A "proper lookout" means maintaining the lookout that an ordinarily careful person would use in light of all conditions existing at the time and those reasonable to be anticipated.

A "proper lookout" includes a duty to see objects and conditions in plain sight, to see that which is open and apparent and to realize obvious dangers. This duty does not merely require looking, but also requires observing and understanding other traffic and the general situation.

¶ 33 Plaintiffs object to this instruction, stating it "suggested to the jury that an improper type of analysis should be used to decide the case. It suggested that [Mr. Clayton] failed in his duty to look out on the

roadway where there was absolutely no evidence presented to support this instruction." This issue addresses negligence, which the jury never reached because it found that there was no defect. Accordingly, we conclude that even if there was error, inclusion of this instruction was harmless. *See State v. Evans,* 2001 UT 22, ¶ 20, 20 P.3d 888.

## C. Number 31

¶ 34 Jury Instruction No. 31 states: "The driver of any vehicle has the duty to exercise reasonable care at all times to avoid placing others in danger." This instruction is taken verbatim from MUJI 5.1. *See* Model Utah Jury Instructions 5.1 (Utah State Bar 1993). Plaintiffs object to this instruction, stating "[t]here was absolutely no evidence that [Mr. Clayton] was driving over the speed limit or that he otherwise failed to avoid placing [Ms. Montoya] in danger," and that the instruction "invited the jury to speculate as to what caused [Mr. Clayton] to go off the road." Like Jury Instruction No. 30, Jury Instruction No. 31 addresses negligence, which the jury never reached. Accordingly, we again conclude that even if it were error to include this instruction, that inclusion was harmless. *See Evans,* 2001 UT 22, ¶ 20, 20 P.3d 888.

## V. Bifurcation

¶ 35 The trial court bifurcated the damages portion of the case from the liability determination, which prevented Plaintiffs from presenting evidence about the extent of Ms. Montoya's injuries. Plaintiffs argue that "the risk of the degree of potential injury goes directly to the quantity of care owed by the manufacturer," and thus Ms. Montoya's injuries were relevant to Ford's overall responsibilities. However, because the jury found there was no defect in the Explorer, the degree of risk of potential injury is irrelevant. The extent of injuries does not relate to the question of whether the vehicle was defective. Furthermore, a trial court may bifurcate a trial in furtherance of its inherent power to manage its docket. *See Walker Drug Co. v. La Sal Oil Co.,* 972 P.2d 1238, 1244 (Utah 1998). Accordingly, we see no error in the trial court's decision to bifurcate the damages and liability portions of the case.

## VI. Internal Engineering Documents

¶ 36 Plaintiffs attempted to introduce evidence concerning the alleged redesign of the 1997 Ford Explorer, from its original incarnation as the Bronco II to the second generation Explorer that Mr. Clayton was driving. Plaintiffs argue that "evidence of similar defects may be offered to show a defendant's notice of a particular defect, the magnitude of the defect or danger involved, and the defendant's ability to correct the known defect." Ford objected to the evidence as being irrelevant and confusing because it was not related to the defects alleged by the Plaintiffs in this case.

¶ 37 Plaintiffs rely on *Buell–Wilson v. Ford Motor Co.,* 141 Cal.App.4th 525, 46 Cal.Rptr.3d 147 (Cal.Ct.App.2006), which, like the present case, involved a 1997 four-door Ford Explorer car accident. *See id.* at 533, 46 Cal.Rptr.3d 147. In *Buell–Wilson,* the plaintiff prevailed after convincing the jury that the Explorer was "dangerously unstable and prone to rollover" and that the "roof was inadequately supported and defectively weak." *Id.* at 535, 46 Cal.Rptr.3d 147. The trial court allowed evidence to show the similarities and differences in certain design characteristics of the Bronco II and the 1997 Ford Explorer. *See id.* at 535–38, 46 Cal. Rptr.3d 147. The appellate court affirmed the trial court's decision to admit the evidence. *See id.* at 543, 46 Cal.Rptr.3d 147. Specifically, the plaintiffs in *Buell–Wilson* offered evidence concerning the Explorer's high center of gravity, narrow track width, tire pressure, and roof strength. *See id.* at 535, 46 Cal.Rptr.3d 147. Each of these elements went directly to the plaintiff's theory of the accident. *See id.* at 531, 46 Cal. Rptr.3d 147.

¶ 38 *Buell–Wilson* is distinguishable from the instant case. Here, Plaintiffs likewise wanted to introduce evidence of similarities between the Bronco II and the 1997 Explorer, including both models' rollover guidelines, track widths, and centers of gravity. The trial court conducted a full-day evidentiary hearing concerning the admission and foun-

dation of the documents at issue and concluded that they would likely lead to "confusion of the jury" because there was no "identification in any of those documents of something so specific regarding the complaints of this case that would make it relevant." In other words, because Plaintiffs' theory is that first the Explorer's steering tie-rod broke, then the seat belt came unhooked, and finally, the door latch gave way, the information concerning the track width, center of gravity, and rollover guidelines was irrelevant. The trial court did not abuse its discretion in determining that the alleged design defects in the evidence Plaintiffs wished to introduce were not directly related to the accident, *see State v. Whittle*, 1999 UT 96, ¶ 20, 989 P.2d 52. We affirm the trial court's decision to exclude this evidence.

### VII. Fraudulent Marketing

¶ 39 At trial, Plaintiffs alleged fraud on the basis that Ford advertised vehicles that it knew were not safe. Plaintiffs argue that they should have been allowed to introduce evidence of Ford's advertising that conveyed the message that the 1997 Ford Explorer was a safe, family-friendly car. Plaintiffs again argue that because the 1997 Ford Explorer actually was not a safe car and had center-of-gravity issues concerning the tire size, they should have been able to show that Ford was fraudulent in its advertising. Plaintiffs argue that, although Mr. Clayton's father was shown marketing pamphlets before he bought the vehicle, "no one told the Clayton family that the tires on the Explorer were the wrong size or that the tires would make the SUV even more unstable and more dangerous to drive." The trial court excluded the marketing evidence and directed a verdict in Ford's favor on the fraud issue. We review for correctness the grant of a motion for directed verdict. *See Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 10, 104 P.3d 1185. However, we determine that if there were any error, that error was harmless because the jury found that the Explorer was not defective, and

therefore, the fraud claim would have ultimately failed.[5]

### VIII. Jury Sequestration

¶ 40 Plaintiffs argue that the jury was not given an adequate opportunity to deliberate: it was rushed and hungry and thus was coerced. Specifically, Plaintiffs point to the fact that the jurors began deliberations mid-afternoon on a Friday; the trial court told the jurors they would not be able to use their phones during sequestration; the jurors did not break for lunch; the jurors were allowed back into the courtroom to examine the evidence for only five to seven minutes; and the jurors deliberated for only six hours.

¶ 41 We do not agree that the jurors were coerced. First, Plaintiffs did not object during the jury's deliberations and, therefore, waived the issue. *See State v. King*, 2006 UT 3, ¶ 13, 131 P.3d 202. Plaintiffs contend that plain error is demonstrated because the trial court expressly stated a week prior to the jury deliberations that the jury would not begin deliberations on a Friday, but ultimately the jury ended up deliberating on a Friday afternoon. However, the trial court has wide latitude in managing its docket. *See Berrett v. Denver & Rio Grande W. R.R. Co.*, 830 P.2d 291, 293 (Utah Ct.App. 1992). Beginning jury deliberations on a Friday is not inherently problematic; Plaintiffs only object because the trial court initially stated it did not intend to begin jury deliberations on a Friday. Certainly, the trial court could change its mind about when jury deliberations would start. Furthermore, the jurors expressed no concerns about being rushed. They had several breaks during the day and chose not to stop for lunch. Snacks and beverages were available for the jurors throughout the day and they had dinner during their deliberations. Accordingly, we conclude there was no plain error. *See State v. Boyd*, 2001 UT 30, ¶¶ 47–49, 25 P.3d 985 (determining there was no error where the defendant did not object to scheduling of jury deliberations and most of

---

**5.** Further, Plaintiffs have not shown that Mr. Clayton's father relied on Ford's advertisements

when he purchased the Explorer.

the jurors did not "report[ ] any difficulties in reaching a verdict").

## IX. Juror No. 3

 ¶ 42 Juror No. 3 was an engineer who owned his own engineering company. After only three days of testimony, Juror No. 3 informed the trial court he was unhappy serving on the jury. The trial court stated that Juror No. 3 would not be excused unless both parties stipulated to his release. Five days later, the bailiff overheard Juror No. 3 tell other jurors that he had already made up his mind about the case.[6] Plaintiffs argue that the trial court refused to determine the extent of Juror No. 3's bias and that a motion for mistrial would have been futile because the court had already indicated that the juror would not be dismissed.

¶ 43 After reviewing the record, we conclude that the trial court did not abuse its discretion, *see Harding v. Bell,* 2002 UT 108, ¶ 14, 57 P.3d 1093, and furthermore, that any error was invited, *see King,* 2006 UT 3, ¶ 13, 131 P.3d 202. The trial court raised the issue with the parties' attorneys and asked them what they recommended. Plaintiffs' counsel initially suggested that individual voir dire was appropriate; Ford's counsel was uncertain about the best way to proceed. The trial court remained neutral and asked Plaintiffs' counsel if perhaps the court should do "further questioning about what exactly [Juror No. 3] said to him—said to the jury, do you think that's appropriate at this point?" Plaintiffs' counsel responded:

> Well, in light of, in light of that—your comments, your Honor, I just would retract a little from that more strict position and perhaps suggest a personal admonition. That's—an example maybe of bringing him in first and saying, [Juror No. 3], you know you're not supposed to do that. That may be best here, perhaps. Just a thought.

¶ 44 Ford's counsel agreed "maybe another cautionary instruction again." The trial court and Ford's counsel eventually agreed with Plaintiffs, and the trial court re-read the preliminary jury instructions concerning impartiality. Plaintiffs made no further objections. Accordingly, we conclude that any error was invited because both Plaintiff's and Ford's counsel discussed and agreed with the trial court on a solution. *See id.*

## X. Statistical Evidence

 ¶ 45 Ford was allowed to presen`; statistical evidence of other rollover accidents, to which Plaintiffs objected in a pretrial motion. We agree that Plaintiffs appropriately objected, *see* Utah R. Evid. 103(a)(2) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). However, we hold that the trial court did not abuse its discretion in admitting the statistical evidence. *See State v. Whittle,* 1999 UT 96, ¶ 20, 989 P.2d 52. The statistical evidence demonstrated that the accident at issue was extremely severe, which was relevant to Plaintiffs' claim that Mr. Clayton would have survived if the Explorer's occupant systems had been designed differently. The evidence also bolstered Ford's argument that Mr. Clayton's death and Ms. Montoya's injuries were attributable to the severity of the accident, not to the Explorer itself. The evidence was relevant and we are not convinced that it was unduly prejudicial. *See* Utah R. Evid. 403. Therefore, we affirm the trial court's admission of this evidence.

## XI. Testimony of Trooper Pace

 ¶ 46 Plaintiffs challenge the testimony of Trooper Ross Pace, the officer who first responded to the accident. Plaintiffs objected to hearsay opinions offered in his accident report and his "speculative and cumulative" opinion testimony as to whether Mr. Clayton was wearing a seat belt, was asleep, or was otherwise inattentive. After Trooper Pace testified, Plaintiffs moved to strike his causation opinion testimony as speculative because there were several items at the accident scene that he had not investi-

---

6. There is no indication that Juror No. 3 told the jury what he thought, merely that he had made up his mind.

gated (i.e., why the Explorer's right front wheel was turned completely to the left, while the left wheel pointed ahead, and why the tie rod had broken in the middle as opposed to at one end). The trial court denied Plaintiffs' motion. Plaintiffs again raised this issue in their post-trial rule 59 motion, arguing that Trooper Pace's causation opinion bolstered Ford's accident reconstruction expert's testimony and was highly prejudicial. Again, the trial court denied the motion.

¶ 47 Plaintiffs now argue that Trooper Pace should not have been allowed to testify as an "expert" based on his "superficial" investigation. Plaintiffs argue that Trooper Pace's opinion was not helpful to the jury's determination of the ultimate issues, but that the jury likely gave great weight to Trooper Pace's opinion. Plaintiffs particularly argue that the jury may have ignored the one eyewitness who testified that he saw the Explorer lift off the road before it began to roll.

¶ 48 However, we conclude that any error was invited because the substance of Trooper Pace's testimony was admitted by Plaintiffs through other means. First, Plaintiffs' counsel solicited testimony from Mr. Clayton's father that in the course of his own investigation into the matter, Trooper Pace told him that his son fell asleep or was otherwise inattentive, drifted off the road, corrected too sharply, and was not wearing his seat belt. Further, Plaintiffs introduced Trooper Pace's accident report as an exhibit, which states that the driver was "asleep" and "unrestrained." Accordingly, because Plaintiffs admitted this evidence on their own accord, we conclude any error was invited. *See State v. King*, 2006 UT 3, ¶ 13, 131 P.3d 202.

¶ 49 Plaintiffs next argue that Trooper Pace's opinion lacked adequate foundation because he did not thoroughly inspect the accident scene for broken parts or photograph the front suspension or the inside of the Explorer, and thus his opinion was based on speculation. However, Plaintiffs failed to preserve this issue by not objecting at trial on the basis of lack of foundation. *See State v. Cram*, 2002 UT 37, ¶ 9, 46 P.3d 230. Moreover, Ford established a sufficient foundation for Trooper Pace's testimony because he testified that he had advanced training in accident investigation/reconstruction and personal knowledge of the accident scene investigation at issue, and that he had specific training in analyzing tire marks at an accident scene, in calculating speeds in an accident, and in evaluating whether an accident was caused by an inattentive or sleepy driver. *See Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979).

### XII. Cumulative Error

¶ 50 Finally, Plaintiffs ask us to reverse on the basis of cumulative error. Reversal is required where the effect of several errors undermine confidence in the trial. *See Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 928 (Utah 1990). We have found no errors; accordingly, there was no cumulative error.

### CONCLUSION

¶ 51 We conclude that the trial court did not err or exceed its scope of discretion on any of the issues raised by Plaintiffs. Accordingly, we affirm.[7]

¶ 52 WE CONCUR: WILLIAM A. THORNE Jr., Associate Presiding Judge, and GREGORY K. ORME, Judge.

---

7. In its cross-appeal, Ford asserts that Ms. Montoya's claims are barred by the applicable statute of limitations and that the jury's finding regarding when Ms. Montoya knew of her potential claims against Ford is clearly erroneous. Because we have affirmed the jury's verdict we choose not to address those two cross-appeal issues. Ford also requests an award of attorney fees under rule 33 of the Utah Rules of Appellate Procedure in its cross-appeal. *See* Utah R.App. P. 33. Ford asserts that several issues included in Plaintiffs' opening brief are "not grounded in fact" or "not warranted by existing law." Although we have affirmed the trial court's rulings on each of these issues, we decline to award Ford attorney fees for responding to those issues. We also deny Plaintiffs' request for attorney fees pursuant to rule 33.