2014 UT App 28

**Shawn JESSOP, Plaintiff and Appellant,**

v.

**Sheldon HARDMAN, Defendant and Appellee.**

No. 20120224–CA.

Court of Appeals of Utah.

Jan. 30, 2014.

Darwin L. Overson, Salt Lake City, Attorney for Appellant.

Scott W. Christensen and Jeremy M. Seeley, Salt Lake City, Attorneys for Appellee.

Judge J. FREDERIC VOROS JR. authored this Opinion, in which Judges GREGORY K. ORME and JAMES Z. DAVIS concurred.

## Opinion

VOROS, Judge:

¶1 This appeal arises from an accident in which an eight-month-old child, Casey Jessop, pulled a hot iron down onto himself while in the home of his father's friend. The child's mother sued the friend, but the jury found that he was not at fault. The child's mother appeals, contending that the verdict was unsupported by the evidence and was coerced. We affirm.

## BACKGROUND

¶2 Justin Jessop (Father) had been living in his friend Sheldon Hardman's home for several months. Father frequently brought his three-year-old son and his twin eight-

month-old sons (one of whom was Casey) with him to the home. He did so on July 14, 2004. Around 3:00 p.m., Hardman was ironing shirts in the bedroom used by Hardman's daughter.[1] He used an older iron that had neither an indicator light nor an automatic shutoff feature. When the phone rang, Hardman left the room and closed the door behind him but left the iron plugged in.

¶3 Father arrived with the children around 7:30 p.m. About an hour later, he placed the twins in the bedroom used by Hardman's daughter. He left them sleeping and unbuckled in their car seats on the floor near the ironing board. He then went downstairs to bathe his older son. Sometime thereafter, Hardman heard crying and then screaming coming from the bedroom. He went to the bedroom and saw that the hot iron had fallen onto Casey's arm. Casey suffered severe injuries.

¶4 Casey's mother, Shawn Jessop (Mother), sued Hardman individually and on Casey's behalf, alleging negligence. After a four-day trial, the jury returned a verdict of no fault on Hardman's part. Mother's counsel moved for a new trial, alleging insufficient evidence to support the verdict and "irregularit[ies] in the proceedings" as reported by one of the jurors. The trial court denied the motion, and Mother appeals.

## ISSUES AND STANDARDS OF REVIEW

¶5 Mother first contends that the trial court abused its discretion in denying her motion for new trial based on insufficiency of the evidence. "The trial court's denial of a motion for a new trial will be reversed only if 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.'" *Mann v. Fredrickson*, 2006 UT App 475, ¶8, 153 P.3d 768 (quoting *Nelson v. Trujillo*, 657 P.2d 730, 732 (Utah 1982)).

¶6 Mother next contends that the trial court abused its discretion in denying her motion, because the jury was "coerced." She

---

1. Sometimes Father put his children in the bedroom occupied by Father and sometimes in the bedroom occupied by Hardman's daughter, depending on whether Father's children were spending the night and whether Hardman's teenage children were sleeping there.

argues that "several jurors felt time constrained to reach a verdict—any verdict." "In reviewing the judge's ultimate decision to grant or deny a new trial, we will reverse only if there is no reasonable basis for the decision." *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 805 (Utah 1991).

¶ 7 Finally, Mother contends that the trial court improperly struck portions of a juror's declaration under rule 606(b) of the Utah Rules of Evidence. "We review a district court's decision to strike affidavits under an abuse of discretion standard." *Cabaness v. Thomas*, 2010 UT 23, ¶ 50, 232 P.3d 486; *see also Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 107–08 (2d Cir. 2004) (reviewing for an abuse of discretion a ruling that juror affidavits were inadmissible under Rule 606(b) of the Federal Rules of Evidence).

## ANALYSIS

### I. Motion for New Trial

¶ 8 Mother contends that the trial court abused its discretion in denying her motion for new trial based on insufficiency of the evidence. She argues that the trial court's denial of her motion for new trial was "an abuse of discretion because the verdict of no fault [on behalf of Hardman] was against the clear weight of the evidence, was patently unreasonable, and [was] manifestly [unjust]." She maintains that a "review of the evidence presented at trial in a light most favorable to the verdict shows that a new trial should have been granted."[2]

¶ 9 A new trial may be granted when the evidence is insufficient to justify the verdict. Utah R. Civ. P. 59(a)(6). However, a trial court "cannot grant a new trial if there is sufficient evidence to support a verdict for either party and the judge merely disagrees with the judgment of the jury." *Crookston*, 817 P.2d at 799 n. 9. "The power of a trial judge to order a new trial is to be used in those rare cases when a jury verdict is manifestly against the weight of the evi-

dence." *Braithwaite v. West Valley City*, 921 P.2d 997, 1001 (Utah 1996) (citation and internal quotation marks omitted).

¶ 10 "A motion for a new trial invokes the sound discretion of the trial court, and appellate review of its ruling is quite limited." *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 21, 309 P.3d 201 (citations and internal quotation marks omitted). "A party claiming that the evidence does not support a jury's verdict carries a heavy burden. The evidence is considered in the light most supportive of the verdict, and we will not substitute our judgment for that of the jury where the verdict is supported by substantial and competent evidence." *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985) (citation omitted). "The trial court's denial of a motion for a new trial will be reversed only if 'the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.'" *Mann v. Fredrickson*, 2006 UT App 475, ¶ 8, 153 P.3d 768 (quoting *Nelson v. Trujillo*, 657 P.2d 730, 732 (Utah 1982)).

¶ 11 Here, the record does not establish that the jury's verdict was "plainly unreasonable and unjust." Hardman was interrupted while ironing in his daughter's bedroom. He left the room and closed the door. Some four hours later, Father arrived and put the twins in one of the two available bedrooms; Hardman did not know which. Father set the twins down next to the ironing board. The twins were asleep in their car seats and Father unbuckled them. Father acknowledged that an ordinarily observant person walking into the bedroom could have seen the iron, the ironing board, and the cord; that the iron was in a position where it could fall on Casey; that Father didn't notice it because he probably wasn't paying attention; and that the iron would have been dangerous even if it had not been hot. Finally, Father did not ask Hardman to watch the children—in fact he acknowledged that he himself was responsible for their care.

---

**2.** Mother also contends that the trial court applied an incorrect standard of law when it denied her motion for new trial. However, the challenged statement was actually spoken by defense counsel. Thus, even if the passage articulated the wrong standard—which is not at all clear—we could conclude from it only that defense counsel, not the court, was confused.

¶ 12 The trial court instructed the jury that "[i]f an unsafe condition on the property is so obvious that a person could reasonably be expected to observe it, then Sheldon Hardman does not have to warn others about the dangerous condition." The trial court further instructed the jury that to succeed in her claim, Mother was required to prove that Hardman "knew or had reason to know that [Father] would not discover [that] the iron had been left on and unattended in [the daughter's bedroom] or realize its danger" and that Father "did not discover the iron had been left on and unattended in bedroom number one or did not realize its danger."

¶ 13 Bearing in mind the limited scope of our review of a trial court's denial of a motion for new trial, and viewing the evidence in the light most supportive of the verdict, we cannot say that the evidence here was "completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust." *See Mann,* 2006 UT App 475, ¶ 8, 153 P.3d 768 (citation and internal quotation marks omitted).

## II. Coerced Verdict

¶ 14 Mother next contends that the jury's verdict was "coerced because several jurors felt time constrained to reach a verdict—any verdict." Specifically, Mother argues that the bailiff's refusal to allow two jurors to make phone calls to change evening arrangements had a coercive effect. Based on this premise, Mother filed a motion for new trial, which the trial court denied. As explained above, *see supra* ¶¶ 9–10, "[i]n reviewing the judge's ultimate decision to grant or deny a new trial," this court "will reverse only if there is no reasonable basis for the decision." *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 805 (Utah 1991).

¶ 15 Mother infers coercion from the circumstances of the jury's deliberations; no *Allen*-type instruction was given.[3] Throughout the trial, the court had told the jury that trial would "generally" run until 5:00 p.m.,

that on "Thursday [they'd] be done," and that trial would be "done by 5" on that day. The trial court anticipated that argument would end by noon on that Thursday and that the case would be submitted to the jury early in the afternoon. However, the case was in fact not submitted to the jury until 4:16 p.m. on that day. Just before deliberations began, the bailiff asked the jurors to turn over their phones. Two jurors asked if they could make phone calls to let others know that the trial was running later than they expected. Specifically, one juror explained that she was scheduled to pick up her daughter from the babysitter at 5:30 p.m. and needed to make other arrangements. Another apparently needed to cancel plans for that evening. The bailiff denied both requests, and the jury began deliberations.

¶ 16 The court instructed the jury, "The bailiff cannot answer questions, but if you have questions, you may place them in writing and [the judge] will respond to your questions after discussing [them] with counsel." And in fact the jury sent out two different questions to the judge, one at 5:29 p.m. and one at 5:59 p.m., to which he responded in writing. At approximately 6:20 p.m., the jury returned a verdict of "no fault" on the issue of Hardman's negligence.

¶ 17 Mother later moved for a new trial under rule 59(a)(1) of the Utah Rules of Civil Procedure. That rule authorizes a trial court to grant a new trial based on "[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion by which either party was prevented from having a fair trial." Utah R. Civ. P. 59(a)(1). The trial court denied the motion.

¶ 18 While acknowledging that no *Allen* instruction was given, Mother nevertheless relies on cases involving *Allen* instructions or other circumstances unlike those presented here. For example, in *Lucas v. American Manufacturing Co.,* the trial judge told jurors that due to an approaching hurricane

---

3. The *Allen* instruction takes its name from *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). "In that case, the United States Supreme Court approved the use of supplemental jury instructions to help a deadlocked jury reach a unanimous verdict. This type of jury instruction is also referred to as a 'dynamite' instruction, 'verdict-urging' instruction, or 'hammer' instruction." *State v. Ginter,* 2013 UT App 92, ¶ 4 n. 2, 300 P.3d 1278 (citations omitted).

they "must reach a verdict within fifteen minutes or return at a later date." 630 F.2d 291, 293 (5th Cir.1980). And in *Witco Chemical Corp. v. Peachtree Doors, Inc.*, after a seven-week trial, the judge excused the jurors indefinitely, only to recall them six weeks later. 787 F.2d 1545, 1548–49 (Fed. Cir.1986). These cases offer little useful guidance.

¶ 19 In response, Hardman relies on two Utah cases. The first is *Clayton v. Ford Motor Co.*, 2009 UT App 154, 214 P.3d 865. In that case, "the jurors began deliberations mid-afternoon on a Friday; the trial court told the jurors they would not be able to use their phones during sequestration; the jurors did not break for lunch; the jurors were allowed back into the courtroom to examine the evidence for only five to seven minutes; and the jurors deliberated for only six hours." *Id.* ¶ 40. The plaintiffs argued that "the jury was not given an adequate opportunity to deliberate: it was rushed and hungry and thus coerced." *Id.* This court did not agree that the jurors were coerced. *Id.* ¶ 41. We noted that the trial court has wide latitude in controlling its docket, that the jurors expressed no concerns about being rushed, that they had several breaks during the day, and that they chose not to break for lunch. *Id.*

¶ 20 The second case Hardman cites is *State v. Boyd*, 2001 UT 30, 25 P.3d 985. There, the jury began deliberating after 5:00 p.m. and returned its verdict five or six hours later. *Id.* ¶ 47. The defendant argued that the trial court's failure to advise the jury that they could adjourn and return the next day to continue deliberating was tantamount to coercing the verdict. *Id.* The Utah Supreme Court readily concluded that the verdict was not coerced. The jury "never reported any difficulties in reaching a verdict, nor did it express a desire to halt deliberations for the evening." *Id.* ¶ 49.

¶ 21 We likewise conclude that the trial court did not abuse its discretion in denying Mother's motion for new trial based on jury coercion. This case is comparable to *Clayton* and *Boyd.* The trial judge did not give an

*Allen* instruction, impose time limits on the jury, or otherwise urge the jurors to deliberate quickly. Indeed, no act of the trial judge is even at issue here. Moreover, the jurors knew how to communicate with the judge and in fact did so twice during deliberations, yet they never expressed concern over the timing of their deliberations. They deliberated for two hours. The judge stated that he met with all the jurors afterward and none mentioned a time constraint.[4] We see no abuse of discretion here.

### III.   Juror's Declaration

■ ¶ 22 Finally, Mother contends that the trial court improperly struck portions of a juror's declaration. She asserts that the struck allegations fell within an exception to the general rule excluding juror testimony. "We review a district court's decision to strike affidavits under an abuse of discretion standard." *Cabaness v. Thomas*, 2010 UT 23, ¶ 50, 232 P.3d 486.

¶ 23 In support of her motion for new trial, Mother submitted a declaration of one of the trial jurors. Paragraph 4 of the declaration—not at issue on appeal—described the bailiff's actions in not permitting the jurors to make outside calls before beginning deliberations at 4:30 p.m. on the last day of trial:

> When the bailiff escorted the jury to the deliberation room, the bailiff asked the jurors to turn over their cell phones. Several jurors asked that they be permitted to call and let others know that they would be later than they had anticipated. One juror indicated that she needed to make arrangements for her daughter to be taken care of for that evening. Another juror indicated that she had made arrangements for that night and needed to cancel those arrangements. The bailiff said that that would not be allowed and took all of the jurors' telephones and would not give us access to any other means of calling to inform anyone that we would be later than had been anticipated.

In addition, paragraph 6 of the declaration—at issue on appeal—described the declarant's

---

4. Mother's counsel stated in the motion hearing that he (counsel) did not speak with the two

jurors in question after trial, as "they left immediately."

opinion of the effect of the bailiff's actions on jury deliberations:

> Shortly after 6:00 p.m., the jury returned a verdict in favor of the defendant after the two jurors mentioned above changed their vote. Those two jurors appeared to me to be anxious due to their not being able to contact others outside the deliberation room to make arrangements for deliberations running later than had been anticipated. I believe the time constraints that were placed on the jury played a significant role in the jury reaching the verdict that it did.

¶ 24 Hardman moved to strike the declaration under rule 606(b) of the Utah Rules of Evidence. The court granted the motion as to paragraph 6. Mother appeals that ruling.

■ ¶ 25 Rule 606(b)(1) of the Utah Rules of Evidence prohibits "virtually all inquiries into the jury deliberation process," *State v. Santana–Ruiz*, 2007 UT 59, ¶ 33, 167 P.3d 1038:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Utah R. Evid. 606(b)(1). Like rules governing other evidentiary privileges such as the attorney–client privilege or the priest–penitent privilege, "this rule 'denies the court access to what may be relevant information ... that might, for example, justify a motion for a new trial.'" *State v. Maestas*, 2012 UT 46, ¶ 113, 299 P.3d 892 (omission in original) (quoting *United States v. Benally*, 546 F.3d 1230, 1234 (10th Cir.2008)). But "it also ensures that 'jurors [may] express themselves candidly and vigorously as they discuss the evidence presented in court.'" *Id.* (alteration in original) (quoting *Benally*, 546 F.3d at 1234).

¶ 26 As the United States Court of Appeals for the Tenth Circuit has explained, this rule insulates the deliberations of the jury from subsequent second-guessing by the judiciary. Jury decision-making is designed to be a black box: the inputs (evidence and argument) are carefully regulated by law and the output (the verdict) is publicly announced, but the inner workings and deliberation of the jury are deliberately insulated from subsequent review.

*Benally*, 546 F.3d at 1233 (discussing the federal analog to Utah Rule 606(b)(1)). This approach "may seem to offend the search for perfect justice." *Id.* But "[i]f what went on in the jury room were judicially reviewable for reasonableness or fairness, trials would no longer truly be by jury, as the Constitution commands. Final authority would be exercised by whomever is empowered to decide whether the jury's decision was reasonable enough, or based on proper considerations." *Id.*

■ ¶ 27 The prohibition on peering into the black box of jury deliberations does not extend, however, to extraneous prejudicial information or outside influence:

> A juror may testify about whether:
>
> (A) extraneous prejudicial information was improperly brought to the jury's attention; or
>
> (B) an outside influence was improperly brought to bear on any juror.

Utah R. Evid. 606(b)(2). In *State v. Maestas*, our supreme court explained what types of juror misconduct qualify as extraneous prejudicial information:

> Typically, extraneous prejudicial information cover[s] misconduct such as jurors reading news reports about the case, jurors communicating with third parties, bribes, and jury tampering. It includes the jury's consideration of evidence not admitted in court, and instances where a juror conduct[ed] his own investigation and [brought] the results into the jury room.

2012 UT 46, ¶ 114, 299 P.3d 892 (alterations in original) (citations and internal quotation marks omitted). "But extraneous prejudicial information does not include evidence of discussions among jurors...." *Id.* (citation and internal quotation marks omitted).

¶ 28 Mother relies principally on Justice Durham's opinion in *State v. Thomas,* 830 P.2d 243 (Utah 1992) (Durham, J., with two justices concurring in the result). The "unusual facts of [that] case" splintered the court, and the portion of the opinion on which Mother relies represented the reasoning of only one justice. *See id.* at 248. Moreover, the issue focused on a juror who falsely answered a question on voir dire. *Id.* at 244. The passage of the opinion on which Mother relies unsuccessfully urged the court to extend the doctrine announced by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). *See Thomas,* 830 P.2d at 248 (Durham, J., with two justices concurring in the result) ("I would extend the second prong of the *McDonough* test to require a showing that a correct response would have provided *either* a valid basis for a challenge for cause *or* that the nondisclosure itself prevented the juror from serving as a fair, impartial factfinder."). Consequently, *Maestas,* not *Thomas,* controls here.

¶ 29 We conclude that the trial court's rulings were well within its discretion. The court refused to strike paragraph 4 of the declaration, which describes actions of the bailiff and other facts outside the jury's deliberations. But the court struck paragraph 6, which describes the deliberations themselves and one juror's opinion of other jurors' mental states and voting motivations.[5]

## CONCLUSION

¶ 30 Mother has not shown that the trial court erred in denying her motion for new trial, because the evidence, when viewed in the light most supportive of the verdict, was not " 'completely lacking or . . . so slight and unconvincing as to make the verdict plainly unreasonable and unjust.' " *See Mann v. Fre-*

---

5. Mother also makes a three-sentence argument that the trial court abused its discretion by not holding an evidentiary hearing "on allegations of irregularities in the proceedings," which we understand to mean the allegations in the juror's declaration. In support of her argument, Mother cites a non-Utah case involving a factual dispute over whether a juror was sleeping during trial— the judge stated that "there was no juror asleep

---

*drickson,* 2006 UT App 475, ¶ 8, 153 P.3d 768 (quoting *Nelson v. Trujillo,* 657 P.2d 730, 732 (Utah 1982)). The trial court did not abuse its discretion by denying Mother's motion for new trial after determining that the jury had not been coerced. And the trial court did not abuse its discretion when it allowed objective portions of the juror's declaration but struck the juror's subjective impression of other jurors' feelings and motivations.

¶ 31 Affirmed.

during this trial" but the juror himself stated that he had been asleep during trial. *See United States v. Barrett,* 703 F.2d 1076, 1082–83 (9th Cir.1983). However, Mother identifies no similar factual dispute in the present case. Accordingly, even were we to apply *Barrett* here, Mother has not shown· that the trial court abused its discretion.